### CHERRY VALLEY IRON WORKS v. FLORENCE IRON RIVER CO.

(Circuit Court of Appeals, Sixth Circuit. October 29, 1894.)

#### No. 153.

1. CONTRACT OF SALE—RESCISSION BY SELLER.
   Defendant contracted to sell to plaintiff a quantity of ore, to be delivered in seven equal parts in each of seven months, the price to be also paid in equal installments in the same months. The contract contained a stipulation that, if plaintiff failed to make any payment for ten days after it was due, defendant should have the right to cancel the contract as to all ore not delivered at the time of such default. Plaintiff made the first three payments, but, not needing all the ore, defendant delivered less than the amount called for by the contract during such three months. Plaintiff failed to make the fourth payment, and defendant refused to ship more ore until the same was made. No more payments were made and no more ore shipped. *Held*, that the refusal to make further shipments was an exercise of the right reserved to defendant by the aforesaid stipulation in the contract; that this did not amount to an absolute rescission of the contract, entitling both parties to be restored to their original positions, but entitled defendant to treat plaintiff's failure to pay as a breach of the contract, justifying defendant in refusing to continue deliveries, and giving defendant the right to claim damages for such breach, while plaintiff was entitled to a return of the sums paid in excess of the price of the ore actually delivered.

2. PAYMENT—BY NOTES.
   Plaintiff made the first two payments in notes, which were accepted by defendant, and offered notes for the third payment, which defendant refused to accept, but agreed to hold for a short time, until plaintiff should take them up in cash. Defendant afterwards negotiated the notes. *Held*, that defendant was not entitled to treat plaintiff as in default upon such third payment.

3. SALES—MEASURE OF DAMAGES.
   The ore sold having never been separated from the mass in defendant's possession, and appropriated to plaintiff, and the title not having passed, the measure of damages for plaintiff's failure to take and pay for the undelivered ore was the difference between the contract price and the market price at the times when the several installments should have been delivered.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This was an action by the Cherry Valley Iron Works against the Florence Iron River Company. Defendant had judgment, and plaintiff brings error.

This action was brought by the plaintiff in error to recover a sum of money claimed to be due from the defendant by reason of an overpayment made by the plaintiff upon a contract of sale between the defendant, as seller, and the plaintiff, as buyer, of a quantity of ore from the defendant's mines. The contract was in writing, bearing date August 20, 1890. By it the defendant, the Florence Iron River Company, agreed to sell to the Cherry Valley Iron Works, and the latter company agreed to buy, 10,000 tons of the Florence Iron River Company's ore, of its standard quality, at the price of $3.75 per ton, making $37,500 for the whole purchase. This total sum was to be paid in seven equal payments of $5,357.14 each, on the 15th day of October, November, December, January, February, March, and April following, respectively, and the ore was to be delivered in equal installments during those months, corresponding to the payments. Other stipulations were contained in the contract, but none of them are material to the present controversy, except the one found at the end, which is in the following words: "And in case said party of the second part fails to make any or either of the above-named payments for the period of ten days after the same becomes due, said Florence Iron River Company shall have the right to cancel this contract for all ore not delivered at the time such default is made."

The plaintiff made the payments due in October and November by its notes, payable in four months after their date, and payment in that mode was accepted by the defendant, and credit given for the amount thereof. In December the plaintiff was again proceeding to make the payment for that month in that way. But while the notes were in the course of transmission to the defendant, the latter notified the plaintiff that it was unwilling to receive that payment by notes, and that it would insist upon payment in cash. It was, however, agreed that the defendants should hold the notes until the end of December, and that plaintiff should take them up with cash in the meantime. They were not so taken up, but were negotiated by the defendant, and paid by the plaintiff on their maturing, four months after their date. The plaintiff, not being ready to receive the ore, did not call for any delivery until November. During that month 731 tons, in December 2,090 tons, and in January 145 tons were delivered.

On the 27th day of January, 1891, the plaintiff requested a resumption of shipment at the rate of five cars per day. But it had not made the January payment, and the defendant, on January 29th, refused to ship any more ore until both the December and January payments should be made. Matters continued in that state until April 29, 1891, when, all the payments having become due, the defendant demanded payment for the unpaid balance of the whole contract price, the balance being $20,665.40. The plaintiff subsequently offered to pay 25 cents per ton on all the undelivered ore, to be released from the contract. This was refused, the market value of the ore having gone down more than 50 cents per ton below the contract price. After April 29th further correspondence ensued during the month of May, and until the 15th of June. In this correspondence the defendant insisted upon the payment of the contract price, and threatened that unless payment should be made the undelivered ore would be sold for account of the plaintiff, and the difference between the proceeds and the unpaid purchase price would be charged against the plaintiff. On the 12th day of May the defendant wrote the plaintiff, saying: "As our final statement to you, we reiterate what we have heretofore written,—that we propose to sell the ore you refuse to take, at the best market price, for your account, and hold your company for the difference." And by letter of May 14th the defendant repeats this purpose.

On June 15th the following letter was addressed by the defendant to the plaintiff: "Cleveland, O., June 15, 1891. J. H. King, Esq., Prest. Cherry Valley Iron Works, Painesville, O.—Dear Sir: We beg to call your attention to the following clause in the contract for the purchase of ten thousand

tons Florence ore, entered into by the Florence Iron River Co. and Cherry Valley Iron Works, under date of August 20, 1890: 'And in case the said party of the second part fails to make any or either of the above-named payments for the period of ten days after the same becomes due, said Florence Iron River Co. shall have the right to cancel this contract for all ore not delivered at the time such default is made.' As your company is in default on several payments under said contract; as in our letters of May 12 and 14, 1891, we give you notice of what our action would be unless you promptly made the payments then long past due,—we beg to notify you that we have exercised the rights conferred upon us in the contract in accordance with the clause mentioned above, and have canceled the contract for all ore now undelivered. Very truly yours, Tod, Stambaugh & Co., Agts."

Thereupon, the plaintiff demanded of the defendant repayment of the sum which it had paid upon the contract in excess of the sum due for the ore delivered at the contract price; such excess being $5,146.27. This being refused, the plaintiff, on July 22, 1891, brought this action to recover it. On July 31st, nine days afterwards, the defendant sold the undelivered ore for three dollars per ton, and credited the sum realized to plaintiff's account. The account, with this credit entered, showed a balance against the plaintiff of $335.83, for which sum the defendant, in its answer, set up a counterclaim.

The case was tried by the court without a jury. The findings of fact were general,—that the plaintiff was not entitled to recover the excess of payment for which it sued to recover, and that defendant was entitled to recover the amount of its counterclaim. An opinion was filed, stating, in part, the facts which the court had found, and its conclusions of law. This opinion was filed on the same day with the filing of the general findings of fact,—August 3, 1894. On the 7th day of September following, a motion for a new trial was overruled, and judgment entered in accordance with the findings, to which the plaintiff excepted. During the trial, objections and exceptions were taken to the admission of each of the several letters above referred to, except that of June 15, 1891. The court, against the plaintiff's objection, received a statement of the account between the parties, as prepared by the defendant's bookkeeper, not to prove the matters therein stated, but as the court's computation, if it should be found correct. The court afterwards adopted the account as correct in the findings in the opinion before referred to, and it appears to form the basis of the judgment. The plaintiff also objected, upon the trial, to the evidence of the resale of the undelivered portion of the ore, but the court received it, and it was treated in the findings as an element in measuring the damages for which the judgment was rendered. The evidence adduced upon the trial is contained in the bill of exceptions.

Henderson, Kline & Tolles (Virgil P. Kline, of counsel), for plaintiff.

Hoyt, Dustin & Kelley (A. C. Dustin, of counsel), for defendant.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

Having stated the case as above, SEVERENS, District Judge, delivered the opinion of the court.

Although the record in this case presents the objections and exceptions of the plaintiff in the court below in a crude and rather defective form, we think they are sufficient to require us to review the principal questions involved in the determination of the correctness of the judgment, and, as their sufficiency for that purpose has not been controverted by the defendant, we shall not go into that subject for discussion in detail.

In order to proceed to a right conclusion upon the matters in difference between the parties, it is necessary to ascertain what

is the proper construction of the contract, mentioned in the foregoing statement, of August 20, 1890, and especially of the stipulation, at the end thereof, whereby the vendor reserved the right to cancel the same as to undelivered ore in case the vendee should fail to make the payments as agreed; for it is upon the construction and effect of that clause in the contract that the controversy mainly turns. It will be convenient to consider, in the first place, what would have been the effect of the contract had that stipulation been omitted. In that case it would have been a contract simply for the sale of 10,000 tons of ore, deliverable in seven equal parts in each of the seven months named, for the price of $37,-500, payable in seven equal installments, payable during those months respectively. The contract would have been entire, and would have bound the vendor to deliver the whole amount, and the vendee to pay the whole price. The fact that there were subordinate stipulations in regard to the dates of delivery and of payment would not break it up into separate contracts for each installment of the ore. It is sufficient to cite, upon this point, the cases of Iron Co. v. Naylor, 9 App. Cas. 434, in the English house of lords, and Norrington v. Wright, 115 U. S. 188, 203, 204, 6 Sup. Ct. 12. And, the contract being entire, as soon as the parties had entered upon its performance by partial delivery and payment, the mere failure of the vendee to make the subsequent payments would not of itself absolve the vendor from proceeding with the deliveries. It may be that a downright refusal to make payment, or other equivalent conduct evincing a purpose to renounce the contract, would entitle the other party to treat the contract as abandoned, and relieve him from the obligation to proceed further in its execution. Winchester v. Newton, 2 Allen, 492. In respect to the obligation of the vendee to accept delivery of the goods under such a contract, where the vendor fails to comply with its stipulations with regard to the time and mode of delivery, it was held in Norrington v. Wright, supra, that he was entitled to insist upon a continued adherence to its terms. This was because they were of the substance of the thing contracted for. But the duty of the vendor, notwithstanding a mere failure of the vendee to make payment of money, not evincing a renunciation of the contract, stands upon a different ground, as pointed out in that opinion, and results, also, from a comparison of the actual decision in that case with other cases distinctly involving the vendor's duty in those circumstances, among them the case of Iron Co. v. Naylor, which it recognizes as authoritative.

In view of the obligation, which the vendor in this contract would otherwise have assumed, to go on with its deliveries notwithstanding a failure to pay, the clause was added by which it could relieve itself of that duty in case it should find it to its interest to do so. It is somewhat plausibly contended by the defendant that the right reserved to "cancel this contract for all ore not delivered at the time such default is made" was the power to obliterate the stipulations of the parties so far as they applied to the undelivered ore, the exercise of which would untie the obligation of the vendee to answer for the damages produced by his preceding

failure to perform the contract, as well as the obligation of the vendor to make further delivery. But we do not think that this is the just construction of the language of that provision, or that it is the construction intended by the parties. In our opinion, it was intended to give an opportunity to the vendor, in the event of nonpayment, to stand on that breach as a justification for its refusal to deliver the ore then undelivered, and treating the contract at an end, so far as its further performance was concerned. We cannot think that it was intended that the exercise of that right was intended to be followed by the consequence of relieving the vendee from responsibility for the very default which was the cause of the vendor's canceling the agreement to make further delivery. The right of the party without fault to treat the obligation to go further as at an end by reason of the nonperformance of the other party is sometimes spoken of in judicial opinions as a right "to cancel the agreement," whereupon the right would accrue to the party not in fault to sue for his damages. We think that the word must be deemed to have been used in that sense here. But the plaintiff contends that the letter of June 15th was in itself an unequivocal rescission of the contract as far as it related to the undelivered ore, and put an end to the mutual obligations of the parties with respect to it. But it professed to be the assertion of the right secured by the contract, and upon the construction of the contract itself which we think is the right one the exercise of that right would not be followed by such consequences. Aside from that consideration, we do not think the letter bears the construction which the defendant puts upon it. An absolute rescission implies that the parties are to be restored to their former position, and this would involve, among other things, the repayment of the excess of purchase price then in the hands of the vendor. This was not offered or proposed by it in the letter, and the purpose was plainly indicated to hold on to all the vendee's obligations. This put such a limit upon the effect of the language used as to prevent it from operating as a rescission in the technical meaning of that term. In the case of Lumber Co. v. Bates, 31 Mich. 158, there was a contract for the sale of a quantity of lumber, to be thereafter delivered, at an agreed price, part of which was paid down. The lumber was not delivered as agreed, and, after much procrastination, the vendees addressed a letter to the vendors, in which, after reciting the terms of the agreement, and the vendors' breach thereof, they go on to say:

"We shall not, therefore, now accept or receive said logs on the contract, and shall look to you for the money already paid you by us, and interest thereon, and the note of ours you now hold, and for our damages sustained by your failure to perform the contract according to its terms."

The vendees then sued to recover back the consideration which had been paid, upon the ground that the contract had been rescinded, and recovered judgment. But, upon a writ of error to the supreme court, that court said of the plaintiff's contention:

"They could not, in any event, rescind in part, or hold it valid for one purpose and void for another. They must rescind entirely, or not at all. But

here, after declaring their intention to rescind, they say, further, 'we shall look to you for our damages sustained by your failure to perform the contract according to its terms.' There being no rescission established in the present case, the judgment must be reversed."

And Judge Campbell, in a concurring opinion, said of the letter:

"I am satisfied that the letter cannot be treated as a rescission, even if the parties could then have rescinded. Taken altogether, it is rather an assertion of a breach of the contract, and of such delay as would justify a refusal to accept the lumber agreed to be delivered, by reason of the breach, and a claim of damages, instead of a return of the consideration."

That case bears a striking analogy to the present case, upon that aspect of the controversy.

This conclusion leads to the result that, upon the exercise of the right of cancellation provided by the contract after a failure to make the agreed payment, the further performance of it was abandoned, and the aggrieved party had the right to pursue its remedy for the damages sustained by it in consequence of the breach of the contract which was the cause of its abandonment. The plaintiff failed to make the December payment in the manner promised in its agreement, but remitted its notes instead of cash. This was at first objected to by the defendant, but, upon an agreement of the plaintiff to take up the notes during that month, they were retained. They were not 'so paid. But they were retained by the defendant, negotiated by it, and afterwards paid by the plaintiff. We think the defendant, retaining and negotiating the notes, was not entitled to treat the plaintiff as in default in respect to the December payment. But the default in the January payment was absolute, and justified the defendant in resorting to the privilege reserved, of refusing to go on with the deliveries on account of that default. Its purpose to do this was distinctly indicated on the 27th of January, when it refused to deliver ore as requested. That refusal could only be justified as an exercise of its election to proceed no further on the contract. It is true it offered to surrender the position it had assumed, if the other side would make the defaulted payments, but correspondence on the subject was fruitless, and no agreement was ever reached thereafter in respect to it, and on May 15th following it finally gave notice that negotiations were at an end, and, in effect, that it adhered to the proposition that the contract would be treated as canceled. The defendant stood upon the ground it had taken in January, and it must be taken to have elected to treat the contract as broken by the default in making the payment due in January. Upon this view of the nature of the contract, the admission of the letters which passed between the parties between the 29th of January and 15th of June, if erroneous, was harmless, for they would not change the contract or the rights and obligations of the parties.

The position of the parties, therefore, was this: The plaintiff was entitled to recover the amount which it had paid in excess of the contract price of the quantity of ore actually delivered; and the defendant was entitled to recover, by way of counterclaim, the damages which it had sustained from the plaintiff's breach of the contract which had, on account of such breach, been "canceled" by the defendant. As to the amount of excess of payment by the plaintiff,

there is no dispute.    In regard to the measure of defendant's damages, we think the court below erred in adopting a rule which was not applicable.    The defendant, entertaining an erroneous conception of the means which it was entitled to adopt to fix the amount of its damages, gave notice, in its letter of June 15th, of its purpose to sell the undelivered ore for account of the plaintiff, and hold the latter for the difference between the price realized from the sale and the contract price; and this purpose it carried into effect on July 31st, nine days after the suit was commenced.    The sale in this case was of goods to be taken from a mass.    The subject of the bargain was not, therefore, identified at the time when it was made.    It is true that the goods might afterwards be identified by a separation from the mass, and the appropriation, by the vendor, of the portion thus identified, to the contract.    Blackb. Sales, 128; Benj. Sales, 358 et seq.; Claflin v. Railroad, 7 Allen, 341; Bank v. Bangs, 102 Mass. 291.    This is because his authority to make the appropriation is implied in the contract.

If the subject-matter is identified when the contract is made, the title passes to the vendee, in the absence of controlling stipulations. When the subject-matter is subsequently identified by its appropriation to the contract, the title passes at the time of such appropriation. But when there has at no time been identification of the subject, the title remains in the vendor.    In those cases where the title has passed before the contract is broken, and the rights of the parties have been converted into claims for damages arising from the breach, the nature and kind of remedies to which the vendor may resort is the subject of much controversy in the opinions of the courts. There is high authority for the proposition that the vendor, in such a case, may, among other remedies, by virtue of a species of lien for the purchase price, sell the goods as those of the vendee, and hold the latter for the difference between the price obtained and the contract price.    This was the remedy resorted to here.    It is not necessary for us to decide whether the vendor has this remedy in the class of cases just mentioned.    It is clear that this case does not belong to that class.    Here, the title never passed, and the goods at all times remained the property of the vendor, subject to any disposition it might be pleased to make of them, until it finally sold them on the market to other parties.    The implied authority of the vendor to segregate the goods and appropriate them to the contract had long previously expired.    In such cases the rule is general, if not universal, that the measure of the damages which the vendor may recover is the difference between the contract price and the market price at the time fixed by the contract for delivery.    2 Sedg. Dam. (8th Ed.) § 753; Boorman v. Nash, 9 Barn. & C. 145; Phillpotts v. Evans, 5 Mees. & W. 475; Ripley v. McClure, 4 Exch. 345; Leigh v. Paterson, 8 Taunt. 540; Brownlee v. Bolton, 44 Mich. 218, 6 N. W. 657; Keller v. Strasberger, 90 N. Y. 379; Zuck v. McClure, 98 Pa. St. 541.    In the present case the parties had, by mutual concurrence, postponed part of the October, November, and December deliveries, but to no definite time, and the parts of the ore which had been thus passed over, at the date of the cancellation, were then due.    The

other installments, being those for January, February, March, and April, were deliverable in any part of each of such months, and it would seem that the average value during the month would be the just basis of comparison for the market price.

The defendant elected on the 29th of January, 1891, to treat the contract as broken. That was the inevitable inference to be drawn from its refusal to go on with it. And, having once made its election, was bound by it, unless the parties should thereafter substitute some new agreement, which, as we have already said, was not done. The proceeding of the defendant in making the sale on July 31st of a quantity of ore equal to the remaining portion thereof, for account of the plaintiffs, was wholly unauthorized, and proof thereof was immaterial. Nor was it admissible to prove the actual market value of the ore. It was several months later than the time to which such proof would be relevant, and it is distinctly shown that the price was steadily sinking during that period. The date was too remote to furnish any reliable basis for estimating the value of the ore at the dates when it was deliverable. But it further appears that the court made the plaintiff responsible for this sale in July, and made it the basis of the defendant's recovery. It follows, from what we have said, that this was error. There is no finding in regard to the value of the ore at the time fixed by the contract for the deliveries, and we have not the data for ordering the proper judgment. The judgment of the circuit court will therefore be reversed, with directions to award a new trial.