GEORGE H. FINLAY ET AL. *vs.* ISAAC SWIRSKY ET AL.

Third Judicial District, New Haven, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

By "rescinding " an executory contract of sale after the vendee has refused to comply with its terms, a vendor does not necessarily extinguish it so that it cannot thereafter be made the basis of an action for damages. What meaning is to be given to the word "rescind" in that connection, depends upon the intention of the vendor in light of all the attending circumstances.

In the present case the plaintiffs, in April, 1920, agreed to sell, and the defendants to buy, eight hundred tons of sugar at twenty cents a pound, to be shipped from Java to New York during the next July, August or September, at the sellers' option. It was further stipulated that the defendants, to secure the payment of the agreed price, should immediately establish a bank credit in favor of the plaintiffs for an amount sufficient to cover the invoice price of the shipments, about $350,000. This the defendants failed to do, though they repeatedly assured the plaintiffs that the credit would soon be arranged. The sugar was bought in Java and shipped in August, and the defendants were so informed. In September the plaintiffs offered to let the defendants have two hundred and fifty-five tons of other Java sugar at the contract price, but the defendants declined to take it. On October 9th the defendants were informed that unless they opened the stipulated bank credit at once, the sugar they had bought, which was then in transit, would be disposed of elsewhere for their account, and they would be held responsible for any loss or damage sustained by the plaintiffs. No heed was paid to this notice, and two days later the defendants were notified that their repudiation of their agreement

Finlay *v.* Swirsky.

constituted a material breach of the contract and that the plain-
tiffs "rescinded" the agreement; and at the same time the present
action for damages was begun. The trial court found that the
refusal of the defendants to perform the contract was wilful and
intentional and due to the fall in the price of sugar between the
date of the contract and the time fixed for its delivery; and ren-
dered judgment for the plaintiffs for $237,735. *Held:*—

1. That the findings respecting the defendants' intentional violation
of the contract were reasonable and proper deductions from the
evidence, and therefore should not be disturbed.

2. That the trial court was correct in its ruling that the contract had
not been annulled or extinguished by the use of the word "re-
scind," but had simply been arrested or cut off at that juncture,
leaving the parties in the exact situation then existing.

The defendants further insisted that the plaintiffs, having knowledge
of their failure in April and May to open a bank credit, had, by
their delay until October, lost their right to acquiesce in the breach
and sue for damages. *Held* that this contention was unfounded:
that the defendants' default respecting the bank credit touched
a merely auxiliary provision of the contract, inserted for the sole
benefit of the plaintiffs, who were not bound to regard these fail-
ures—which the defendants repeatedly assured them were tem-
porary postponements only—as an unequivocal and absolute
refusal to perform the contract in full; that the defendants' refusal,
as late as September 9th, to accept some Java sugar offered, was
based on an alleged irregularity in the papers attached to the draft
presented at the local bank, without any suggestion of an intention
upon the part of the defendants not to accept the sugar which
they knew was then in transit, when it should arrive; that the con-
duct of the defendants, while evasive and deceitful, did not furnish
unmistakable evidence of their distinct and absolute refusal to
perform, until, by their silence and inaction they acquiesced in
the notices given them by the plaintiffs on October 9th and 11th,
and thus mutually elected to treat the contract as then broken
and at an end, except in so far as it continued to furnish a basis
for the plaintiffs' recovery of damages for its breach.

Intention is an inference of fact, and the conclusion of the trier, unless
unreasonable, is conclusive.

A breach of an executory contract by one party alone, can occur only
after the time for performance has arrived.

Immaterial corrections of a finding are useless.

Argued January 24th—decided April 4th, 1923.

ACTION to recover damages for a breach of agree-
ments to buy sugar of the plaintiffs, brought to and

tried by the Superior Court in New Haven County, *Hinman, J.;* facts found and judgment rendered for the plaintiffs for $237,735, and appeal by the defendants. *No error.*

On April 14th, 1920, the plaintiffs and the defendants entered into two contracts for the sale by the plaintiffs to the defendants of eight hundred long tons of sugar at twenty cents a pound, to be shipped from Java to New York during the next July, August or September at the sellers' option. By one of the terms of the contracts it was stipulated that the buyers, to secure the payment of the agreed price of the sugar, should immediately open a credit in favor of the plaintiffs with an approved bank or banker for an amount sufficient to cover the invoice price of the shipments with disbursements and advances. The invoice price of both shipments was $358,400. On April 20th, 1920, the defendants opened a credit of $150,000 only, in a bank in New Haven, which was limited to expire on September 10th, 1920. They did not at any time open credit in any other bank, although they were frequently requested, and they as often assured the plaintiffs that they were about to do so. The plaintiffs purchased in Java sufficient sugar to fill these contracts, and on August 11th and August 17th they notified the defendants that their sugar had been shipped. Shipments from Java to New York usually took from sixty to ninety days in passage. To these letters the defendants made no reply. On September 9th, 1920, the plaintiffs owned and were able to deliver to the defendants two hundred and fifty-five tons of Java sugar for $114,240, the price fixed in their contracts; but the defendants refused to accept and pay for this sugar, claiming that there was some irregularity in the papers attached to the draft presented at the New Haven bank; but they did not indicate then that they did not

intend to perform their contracts. On October 9th, 1920, the plaintiffs caused notice to be served on the defendants declaring that they had failed to open bank credits in accordance with the terms of the contracts, and that unless they should do so immediately, the sugar they had bought would be disposed of elsewhere for their account and they would be held responsible for any damages or losses. To this notice the defendants gave no attention. On October 11th, 1920, the plaintiffs caused another notice to be served on the defendants, reciting the substance of the contracts and stating that they had failed to open the stipulated credits, and concluding in these works: "Please take notice that as you have repudiated said agreements, have manifested your inability to perform your obligations under said agreements, and have committed a material breach thereof, said G. H. Finlay & Company hereby give you notice that they rescind both of said agreements." At the same time process in this suit was served on the defendants.

On October 7th and 29th, and November 5th, 1920, the plaintiffs sold all the sugar mentioned in these contracts at a fair and reasonable price under then existing market conditions, acting in good faith and judgment. Their losses in these transactions were $217,100.80, which with interest to date of judgment amount to $237,735.30. The plaintiffs at all times acted in good faith, and were able, ready and willing to perform their obligations under the contracts.

*Philip Pond* and *Walter J. Walsh*, with whom was *Bernard Greenberg*, for the appellants (defendants).

*Edmund Zacher* and *Frederick H. Wiggin*, with whom was *David L. Daggett*, for the appellees (plaintiffs).

BURPEE, J. The facts stated above are the material facts in this case and they are not disputed. The defendants concede also that their contracts were broken by their failure to establish the stipulated credits, and that the resulting losses amounted to the sum for which judgment was rendered. The court below has found that this breach was designed, and the defendants' refusal to perform and their intention to repudiate their contracts were first definitely and unquestionably made known to the plaintiffs, when the defendants evaded and ignored the written demands that they open the required credits, and that all this occurred before the time had arrived when the plaintiffs had agreed to deliver any sugar under the contracts; and that the defendants formed their intention and attempted to make this breach because of the great decline in the market price of sugar after the contracts were executed and before the time for delivery. These facts the defendants desire to eliminate from the finding; but we think they were reasonable and proper deductions from the evidence and therefore should not be disturbed.

In this appeal the defendants contend, in the first place, that the plaintiffs, by using the word "rescind" in their notice served on the defendants on October 11th, 1920, then "finally put an end to both contracts as completely as if they had never existed." They argue that the unqualified meaning of the word "rescind" in this connection is to wipe out or annihilate totally, so that the contracts could not thereafter be the basis of any action whatever. We do not agree that this is the proper meaning of that word or the effect of its use in the circumstances which surrounded the parties in this case. The word "rescind" does not always and necessarily mean strictly the same as revoke, annul, or blot out. It is often employed to convey

the idea of cutting off a contract and leaving the parties in the exact conditions then existing. This court has used the word with that meaning. In *Trowbridge* v. *Jefferson Auto Co.*, 92 Conn. 569, 573, 103 Atl. 843, which, like this, was a suit to recover damages for breach of contract, it was said that the repudiation of the agreement by the defendant "authorized the plaintiff to rescind the contract upon his part and bring an action for his damages." In *Wetkopsky* v. *New Haven Gas Light Co.*, 90 Conn. 286, 290, 291, 96 Atl. 950, an action similar to this, we said that it was for the jury to determine whether one party had repudiated a contract under such circumstances as to justify the other party "in rescinding it"; and that, under the terms of our Sales Act, in the circumstances stated, "the vendor may elect to accept such repudiation as an anticipatory breach by rescinding the agreement." In the present case the court was construing the language of the same statute, under which the plaintiffs are suing and which the defendants are citing in support of their argument. Moreover, it is evident from the facts of this case that neither the plaintiffs nor the defendants reasonably could, or in fact did, use and understand this word in the sense which the appellants would now give to it. The notices served on the defendants on October 9th and 11th, followed immediately by the summons in this suit, and considered under the light of the antecedent facts, indicate plainly the fair interpretation of the words and conduct of the parties. From all the evidence before it the trier must determine what the intention was. Intention is an inference of fact, and the conclusion is not reviewable unless it was one which the trier could not reasonably make. *McDermott* v. *McDermott*, 97 Conn. 31, 34, 115 Atl. 638. Here the trial court has reached the conclusion that the plaintiffs did not intend, and that the defendants did

not understand, that the contracts were extinguished by the use of the word "rescind" in the notice of October 11th, 1920, and that thereupon and consequently all claims for damages for their breach were abandoned. This conclusion is not questioned in this appeal. The purport and unmistakable effect of the language of the notices of October 9th and 11th was to make known to the defendants the plaintiffs' election to accept their repudiation of the contracts as ending them, and to enforce their claims for damages for the breach thus made. This it was their right to do. *Churchill Grain & Seed Co.* v. *Newton*, 88 Conn. 130, 134, 89 Atl. 1121; *Neuschtat* v. *Rosenthal*, 87 Conn. 400, 404, 87 Atl. 741; *Cherry Valley Iron Works* v. *Florence Iron River Co.*, 12 C. C. A. 306, 64 Fed. 569; *Philadelphia, W. & B. R. Co.* v. *Howard*, 54 U. S. (13 How.) 307, 340. An executory contract may be terminated at some stage in its performance, or may be abandoned as a live and enforceable obligation, while the party declaring its abandonment still retains the right "to look to the contract to determine the compensation he may be entitled to under its terms for the breach which gave him the right of abandonment." Taft, J., in *Hayes* v. *City of Nashville*, 26 C. C. A. 59, 63, 80 Fed. 641. It seems to be the reasonable deduction from the decisions of the courts which have considered most logically and thoroughly the subject of the rescission of contracts, that the party not in default may, if he choose, accept the renunciation of the other party and annul the contract, so that it shall be as if it had never been made; or, if he prefer, may terminate and abandon the further performance of the contract, without retroactive effect, and leaving each party under the liabilities or with the rights and remedies which have arisen from the conditions existing at the time when the contract was thus cut off.

Which choice has been selected in any case must be determined by fair interpretation of the language used to indicate intention, and in the light of the conditions and circumstances present at the time the intention was distinctly and finally made known. In *Hayes* v. *City of Nashville*, 26 C. C. A. 59, 64, 80 Fed. 641, the court states the rule of construction thus: "Courts consider, not only the language of the party, but all the circumstances, including the effect of a complete rescission upon the rights of the parties, and the probability or improbability that the complaining party intended such a result, in reaching a conclusion as to the proper construction of the language used." In *Hurst* v. *Trow's Printing & Bookbinding Co.*, 22 N. Y. Supp. 371, 375, the court said: "Obviously, a single word, like the word 'rescind,' cannot be wrenched from its context, and considered alone, in its unqualified, strict, and technical sense, in disregard of the surrounding circumstances." We have recently held that the language of a deed creating a restrictive easement "must be read and construed in the light of the circumstances attending and surrounding the transaction." *Baker* v. *Lunde*, 96 Conn. 530, 114 Atl. 673. Applying this just rule to the facts in the case at bar, we have no doubt that the plaintiffs merely indicated their intention to terminate and abandon the contract only respecting future performance, and that thereupon they retained their right of action against the defendants to enforce their liabilities and recover damages for their breach of contract.

The defendants advance another proposition to sustain their appeal. They assert that the plaintiffs, having knowledge of the defendants' breach of the contracts, elected to, and were therefore bound to, perform them in full; and having failed to do so, and having delayed an unreasonable time, they had lost the

right to acquiesce in the breach and sue for damages. It will be noted that the basis of this contention is the assumption that the defendants made a breach of the contracts when first they failed to open the stipulated credits in April or May, 1920. The facts do not sustain that assumption. It is true that they were all the time in default respecting the complete performance of an auxiliary provision of the contracts, and that the plaintiffs, knowing of this default, took steps to carry out their part of the principal provision of the contracts. But this default was by no means an unequivocal and absolute refusal by the defendants to perform the contracts in full. On the contrary, they repeatedly assured the plaintiffs that their bank was arranging for the credits and that they would soon be opened, and as late as September 9th, when they refused to pay for some sugar offered to them by the plaintiffs, they did so explicitly because of some technical irregularity, and did not then indicate in any way an intention to refuse to take and pay for the sugar which they knew had been bought for them and was in transit, when it should arrive. This collateral provision of the contracts was intended only to secure this payment when it became due, and was inserted for the benefit of the plaintiffs solely. They had the right to permit the defendants to defer the fulfillment of this subordinate obligation without affecting the principal provisions of the contracts in any manner. We find nothing in the words or conduct of the defendants until after October 9th, 1920, which suggests a total refusal to perform the contracts before the time for performance should arrive. We discover no single, distinct and unmistakable word or act of repudiation by the defendants, but rather a continued and apparently deceitful evasion of duty and responsibility. Whatever suspicion or belief the plaintiffs may have

formed, they were not constrained, even though they might have been justified, to "transform suspicion, belief, and inference, into things distinct, certain, and absolute, and thus create an unequivocal and absolute renunciation of an agreement out of imaginings and conclusions." *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 37, 55 Atl. 599. Until after October 9th, 1920, there was no conduct nor occurrence in the course of events which put upon the plaintiffs any obligation to decide at any precise time what course they would take or what remedy they would pursue. No refusal, nor renunciation, nor attempted rescission of the contracts by the defendants could amount to a breach by itself. "A breach by one party alone can only occur after the time for performance has arrived." *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 501, 86 Atl. 19. In other words, the contracts remained subsisting ones until the parties mutually elected to treat them as broken, and gave unmistakable evidence of such election. *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 55 Atl. 599. At first by express promises, afterward by silence when they should have spoken, the defendants induced the plaintiffs to believe that they had not repudiated and did not intend to repudiate their contracts, and hence to postpone decisive action until October 9th, 1920. Considering these circumstances, this delay cannot justly be held to have been unreasonable. Certainly the defendants cannot fairly complain about it, for they caused it. On October 9th, in order to determine definitely what was the real intention of the defendants, the plaintiffs caused notice to be served upon them that unless the stipulated credits were opened immediately, they would dispose of the sugar elsewhere and hold the defendants responsible for all losses. This notice the defendants ignored and opened no credits. Thus they acquiesced in the plaintiffs' declared inten-

tion to terminate the contracts for the purchase and sale of the sugar. After waiting two days in vain for some response from the defendants, the plaintiffs for the first time had unmistakable evidence of the defendants' distinct and absolute refusal to perform their part of the contracts when the time for performance should come. Thereupon the plaintiffs gave notice to the defendants that they adopted their renunciation of the contracts and treated them as then at an end. These two notices were unmistakable evidence that both parties agreed to the renunciation of the contracts on October 11th, 1920. That termination released both parties from all obligations and rights under the contracts, except only the right of the plaintiffs to bring suit upon them for consequent damages. *Johnstone* v. *Milling*, L. R. 16 Q. B. D. 460, 467, cited in *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 34, 55 Atl. 599. Thereafter there was nothing for the plaintiffs to do in performance of their part of the contracts. The inability and refusal of the defendants excused the plaintiffs from any further act. *Janulewycz* v. *Quagliano*, 88 Conn. 60, 64, 89 Atl. 897; *Smith* v. *Lewis*, 26 Conn. 109, 118.

The defendants suggest that the plaintiffs' offer of a quantity of sugar on September 9th, 1920, did not constitute a tender of performance of either contract. We have not considered that transaction as a tender. The defendants' refusal to accept and pay for this sugar was explicitly placed on the ground of some technical irregularity in the papers. But at this opportune time the defendants refrained from any suggestion that they did not intend to perform the contracts in full when the time for performance should arrive. This transaction is significant only as it reveals either that the defendants had not then finally decided to repudiate the contracts, or if they had, that they intended to

conceal that fact from the plaintiffs, and thus to delay their adoption of the repudiation. It demonstrates conclusively that the defendants did not and did not mean to make the absolute and unequivocal refusal to perform which the law requires to put the other party to their election to adopt or ignore.

The defendants appeal from the refusal of the court below to correct and add to its findings in certain particulars. The evidence in the record supports these conclusions of the court in all matters which we deem material in our consideration of the appeal, and none of the requested additions would, if made, affect our determination of the decisive questions involved.

There is no error.

In this opinion the other judges concurred.