## Frank R. Thompson, Appellant, v. J. S. Frelinghuysen, Appellee.

### Gen. No. 20,274.

1. PRINCIPAL AND AGENT, § 69*—*when agent entitled to commissions.* In an action for contingent commissions under a written contract by which a plaintiff was to act as insurance agent for several companies, *held* that the plaintiff's right to such commissions became vested at the end of the year, although the total amount could not be ascertained until the expiration of another year, and such right was not affected by a contract relating to future relations between the parties.

2. PRINCIPAL AND AGENT, § 83*—*what amount of agent's commission.* In an action for insurance commissions, a contention that office expenses of the plaintiff were not considered in determining the amount of the plaintiff's claim was not maintainable, it appearing that all expenses were satisfied, being charged against premiums, and the contention was contrary to the previous practice of the parties.

3. APPEAL AND ERROR, § 1810*—*when Appellate Court may include interest in judgment.* In an action on an instrument in writing tried before the court without a jury, the court may include interest on the judgment rendered on appeal.

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and judgment here with finding of facts. Opinion filed January 26, 1915. *Certiorari* denied by Supreme Court (making opinion final).

BATES, HARDING, EDGERTON & BATES, for appellant.

W. S. JOHNSON and GEORGE GILLETTE, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Frank R. Thompson commenced an action in assumpsit in the Superior Court of Cook county upon a written contract to recover of the defendant, J. S. Frelinghuysen, an unpaid balance for certain "con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tingent commissions'' earned by him under said contract. On the trial the plaintiff claimed that he was entitled to the total sum of $3,080.85, together with interest thereon, at five per cent. per annum, from January 1, 1907. It does not appear that the *amount* of plaintiff's claim was disputed. The defense was that under the evidence the plaintiff was not legally entitled to recover any sum whatsoever from the defendant. The cause was heard before the court without a jury, resulting in a finding and judgment in favor of the defendant. It is here contended by the plaintiff that the judgment of the trial court should be reversed and that a judgment should be entered in this court against the defendant for said amount and interest.

The facts as disclosed from the evidence are substantially as follows: The defendant, Frelinghuysen, had been for many years the general agent in the city of New York for a number of fire insurance companies. His business required that he have a representative at Chicago, and plaintiff acted in that capacity during the year 1905 under the terms of the written contract sued upon. For several years prior to 1905 plaintiff had acted as defendant's representative at Chicago, and during the year 1904 he was so acting under a contract substantially the same as the contract sued upon, there being a slight difference in the percentage to be paid plaintiff as contingent commissions. The contract sued upon is in the form of a letter, dated August 3, 1905, signed by defendant in New York and addressed to plaintiff at Chicago. It is therein stated that plaintiff is appointed the representative of defendant at Chicago, "as of January 1, 1905," for certain named states, including the state of Illinois, and that the contract is "to continue in full force and effect until terminated by either party by written notice of sixty days." It is further stated that nothing in the agreement is to be construed as

entitling plaintiff to the sole representation of defendant's companies in the district named, or to entitle plaintiff "to contingent commission on business not written, secured or approved" by plaintiff in said district, or to prevent defendant from establishing such other agencies or representatives as may seem expedient to him. The paragraph of the contract headed "Remuneration" is as follows:

"Your salary will be $175.00 per month, paid monthly, and $100.00 per annum for each $10,000.00 of premiums over $80,000.00 in the Manufacturers Lloyds, Merchants Fire Lloyds, Wilmington National, Stuyvesant, Pacific, Insurance Underwriters and Spring Garden, and the actual disbursements made by you for office rent and office expenses.

"In addition to this we will pay you a contingent commission of 9½% on the net profits up to July 1, 1905, and 9% on the balance of the year on the combined business of the National, Stuyvesant, Pacific, Insurance Underwriters and Spring Garden, and a contingent commission of 5% on the net profits of the Manufacturers Lloyds, Merchants Fire Lloyds and Wilmington. These profits to be calculated annually by deducting all losses, commissions, and all other expenses from the EARNED PREMIUM on risks written and/or approved by you in said companies. The commissions on business placed direct with Jameson & Frelinghuysen, Chicago, and the commissions received from outside companies on business placed by Jameson & Frelinghuysen, Chicago, to be placed as an offset against the expenses of the Chicago office in calculating the contingent commission.

"We will also pay you one-third of the excess brokerage commission on all business placed by you in the companies in our office as well as all other companies, being the excess of the total commissions received on such brokerage business over the expenses of Jameson & Frelinghuysen's Chicago office, said expenses not to include the commissions paid to other brokers for business of the various companies. The excess brokerage to be figured at the end of each year."

Prior to August 3, 1905, and from January 1, 1905, plaintiff had been working under a verbal arrangement with defendant, substantially the same as stated in said contract. It is to be noticed that the net profits, upon which plaintiff's contingent commissions depend, are to be "calculated *annually*." This provision, together with the further provision that the contract is to continue in full force until terminated by either party by a sixty days' written notice, suggests that it was contemplated at the time of the making of the contract that the relation of principal and agent between the parties should continue through a term of years. Plaintiff continued to work under said contract up to and including December 31, 1905. Early in December, 1905, however, by mutual agreement, a new contract was entered into between the parties, to commence January 1, 1906, and to continue in force until terminated by either party. This contract is evidenced by a letter written by defendant to plaintiff, dated December 4, 1905, and hereinafter referred to, and under this contract plaintiff worked throughout the year 1906.

It is also to be noticed that in the contract of August 3, 1905, no *special* provision is made for a settlement of plaintiff's contingent commissions, in the event of the termination of said contract by notice or by mutual agreement. It is further to be noticed that the net profits, upon which plaintiff's contingent commissions depend, are to be calculated "by deducting all losses, commissions, and all other expenses from the *earned premium* on risks written and/or approved" by plaintiff in the companies named. The words "earned premium" were emphasized by being written in the contract in capital letters, and, as stated by counsel for defendant in their printed argument here filed, the present suit turns upon the construction of the clause of the contract in which those words appear.

There is no controversy in this case as to the mean-

ing of the words "earned premium" as used in said contract. Counsel agree that the earned premium on a policy of fire insurance is "that portion of the whole premium which the time the policy has run bears to the whole term; that is, if a policy issued for a year, upon which the whole premium is $100, has run for three months, the earned premium would be $25; if it has run for six months, the earned premium would be $50." Counsel also agrees that the policies written or approved during the year 1905 by plaintiff in the various companies named in the contract were all one-year policies, *i. e.*, policies which expired, if not sooner terminated by a fire loss or by cancellation, one year from the date on which they were issued. By the terms of the contract the net profits were to be calculated, not only by deducting "commissions and all other expenses" from the earned premium on said risks, but also by deducting "all losses" on said risks. It is apparent that, on a one-year policy written or approved by plaintiff on December 31, 1905, a fire loss might occur on the last day of the life of the policy, viz., December 31, 1906. It is also apparent that it would be impossible to ascertain whether there would be any profit on the writing of a particular policy until the policy had expired; and it would also be impossible to ascertain whether there would be any profit, or if some profit how much, upon the aggregate premiums received from all the policies written or approved by plaintiff during the year 1905, until the expiration of all such policies, which, as to policies bearing date December 31, 1905, would not occur until December 31, 1906. Of course, it is not difficult to compute the amount of the premium "earned" at any particular time on a policy of fire insurance, but to compute the premium earned at the end of a year on each of many policies written from time to time during the year, in order to ascertain the aggregate "earned premiums" on the year's business, involves considerable labor and

is seldom done. Where, as in this case, the policies are all one-year policies a much simpler method is usually adopted, viz., one-half of the aggregate premiums of policies written during the year is treated as earned premiums and the other half as unearned premiums. This latter half is sometimes called "re-insurance reserve," and is that portion of the aggregate premiums received during the year which is kept as a fund for the protection of outstanding policies. That the parties agreed to this method of computing the earned premiums and the "re-insurance reserve" on the policies written or approved by plaintiff under the contract sued upon, as well as under the prior contract for the year 1904, is apparent from the facts and circumstances in evidence, and particularly from certain letters. About a month after the making of the written contract of August 3, 1905, plaintiff wrote defendant requesting the latter's interpretation of the last two lines of the first clause of the paragraph entitled "Remuneration," which reads, "and the actual disbursements made by you for office rent and expenses," and stating, "I take it for granted that you intend this to read in connection with the balance of this paragraph. The only change to be made was in the contingent." To this letter defendant, on September 8, 1905, wrote plaintiff in reply, as follows:

"Our understanding of your contract is as follows:

"From the premiums is deducted the commission paid brokers and all the expenses of your office of every kind and description, including your own salary and traveling expenses; in fact every expense of whatever nature that pertains to the Chicago business incurred at your office.

"Also deduct all losses incurred during the year and any increase in settlement of losses incurred in *previous* years.

"Also 50% *reinsurance reserve.*

"There is *added* to your business the earned pre-

miums of the *previous* year, *being the amount of reinsurance reserve deducted.*

"Also the amount of commissions on direct business, and all commissions on business placed outside up to but not exceeding the amount of the Chicago expenses."

In accordance with this construction of the contract plaintiff, during the spring of 1906, prepared a statement of the business done by him, showing the net profits thereon as of January 1, 1906, and his earnings on contingent commissions. This statement was forwarded to defendant by letter, dated May 3, 1906, in which plaintiff referred to said statement as his "contingent statement for the year 1905," and requested a "check to cover." After some correspondence plaintiff, on June 18, 1906, forwarded a corrected statement showing the amount due him, as of January 1, 1906, to be $4,704.90. This latter statement was introduced in evidence. The periods from January 1 to June 30 and from July 1 to December 31, 1905, were separated in the statement because of the slight difference in the per cent. of contingent commission stipulated in the contract for the first and the second six months' business. It appears from the statement that the aggregate premiums written and collected by plaintiff during the first six months' period were $50,441.44, and during the second six months' period $50,175.84, or a total for the year of $100,617.28. It further appears that, in arriving at the net profits, plaintiff in said statement *deducted* from the aggregate premium receipts for each six months' period, in addition to commissions paid agents all losses and all expenses, one-half of said premium receipts for each period, designating the same as "50 per cent. re-insurance reserve," or a total "re-insurance reserve" on the business for the year 1905 of $50,308.64. After making these deductions plaintiff computed his contingent commissions for each six months' period, at the percentages stipulated in the contract, from the remain-

der. In other words plaintiff, as to the contingent commissions becoming due him, then requested a payment *on account,* and that he then be paid on the basis of one-half for the net premium receipts procured through his efforts during the year 1905, both parties then knowing that other losses might or would occur on the unexpired policies, which would reduce the amount of the net profits on the policies written by plaintiff during said year. It further appears from said statement, and from other evidence, that plaintiff claimed that there was then due him, on account of his contingent commission on policies *written in 1905,* the sum of $1,686.99. At this time it also appears that there was due him a certain balance for other contingent commissions on policies written by him for defendant, under and by virtue of his 1904 contract, *during the year 1904,* which policies had all expired on December 31, 1905. This was so because a "re-insurance reserve" had similarly been deducted from the amount of the net premiums received on policies written by plaintiff for defendant during said year 1904. Accordingly, as appears from said statement contained in plaintiff's said letter of June 18, 1906, plaintiff then claimed the additional sum (as subsequently corrected) of $3,017.91, for contingent commissions on "re-insurance reserve brought forward from 1904." These two amounts, viz., $1,686.99 and $3,017.91, added together make the total sum of $4,704.90, as then claimed by plaintiff. On June 26, 1906, the defendant forwarded to plaintiff at Chicago seven checks, each payable to plaintiff's order, aggregating the said sum of $4,704.90. These checks were received by plaintiff and deposited and subsequently paid, and plaintiff on June 29, 1906, wrote defendant acknowledging the receipt of "checks for my 1905 contingent."

As previously stated, a new written contract was entered into between the parties by mutual agreement in December, 1905. This contract is also in the form

of a letter written by defendant to plaintiff, dated December 4, 1905, one clause of which provides that the contract is to continue in force until terminated by either party, and another clause refers to the payment by defendant to plaintiff of one-half of certain ''excess brokerage commission,'' which is to be figured ''at the end of each year.''     The other clauses are as follows:

''In consideration of the fact that you are to make your headquarters in the office of Messrs. Rollins & Burdick at Chicago for the purpose of *overseeing and regulating* the business of our companies *outside of Cook County,* we propose to make the following arrangements with you:     We will pay you a salary of one hundred and seventy-five ($175.00) dollars per month, paid monthly, and one hundred ($100.00) dollars per annum for each $10,000 in premiums over $60,000.00 in the Manufacturers Lloyds, the Merchants Fire Lloyds, Wilmington, Stuyvesant, Pacific and Insurance Underwriters, and we will also pay such traveling expenses as you may incur in taking care of our outside business.

''In addition to this we will pay you a contingent commission of 10% on the combined net profits of the Stuyvesant, Pacific, Insurance Underwriters and Wilmington, and a contingent commission of 5% on the combined net profits of the Manufacturers Lloyds and the Merchants Fire Lloyds.     These profits are to be calculated *annually* by deducting all losses, commissions and other expenses from the EARNED PREMIUM on risks written and/or approved by Messrs. Rollins & Burdick in said companies, the commissions on business placed direct with you and the commissions received from outside companies on business placed by you, to be placed as an off-set against the expenses of the Chicago office in calculating the contingent commission.''

It will be noticed that in this contract there is no provision that plaintiff relinquishes any claim he may have to the unpaid balance of his contingent commissions on the net profits on the policies written by him during the year 1905.     And the evidence does not dis-

close that he at any time, either verbally or in writing, relinquished such claim, which, as we have seen, arises because of the deduction required to be made on account of said "re-insurance reserve."

On February 26, 1907, plaintiff wrote defendant a letter in which he inclosed a "final contingent statement on business written during the year 1905"; and also a "contingent statement on business written during the year 1906," and requested a check. On March 7, 1907, defendant wrote plaintiff in part as follows: "We have nearly finished checking up this account. * * * We understand from our Mr. Meserole that in consideration of the new arrangement made on the termination of your contract on December 31-05, there was to be no contingent paid on the unearned premium on business written in 1905. * * * Documents in our possession show distinctly that our understanding of the matter given above is the case." On March 9th plaintiff replied: "The subject of my relinquishing my rights under the old agreement pertaining to the 1905 business was not even mentioned in any conversation which I had with your Mr. Meserole or any one else. Whatever documents you may have in your possession are entirely foreign to me." Several other letters passed between the parties, the plaintiff insisting that he was entitled to said commissions, and the defendant taking the position, as stated in one of the letters, that "there is no contingent commission due you on unearned premiums for 1905, the agreement of 1905 having been cancelled and abrogated upon the new agreement for 1906." On June 22, 1907, plaintiff forwarded to defendant a corrected statement "for the balance of contingent commission due under the 1905 agreement," showing the sum of $3,231.73 to be due him. The defendant refused to pay the same or any part thereof, and on June 28, 1907, plaintiff commenced the present suit. On the trial plaintiff introduced a further corrected state-

ment, showing the sum of $3,080.25 to be due him. The correctness of this *amount* does not appear to have been disputed by the defendant on the trial, nor is it here disputed.

At the conclusion of all the evidence plaintiff submitted to the court the following proposition, to be held as the law applicable to the case, but the court marked the same "Refused," and plaintiff excepted:

"The court finds as a matter of law that, under the contracts introduced in evidence in this case, the plaintiff is entitled to receive and recover from defendant that portion of the profits of the business written or placed by him in the year 1905 as is designated in the contract dated August 3rd, 1905, and covering from January 1st, 1905, as soon as said profits could be ascertained, and that said profits could not be ascertained until January 1st, 1907."

Counsel for defendant here contend, in substance, that *all* contingent commissions due plaintiff under the 1905 contract sued upon were *paid* to him on June 26, 1906, by said checks aggregating the sum of $4,704.90; that it was not contemplated by the parties that plaintiff was to be paid contingent commissions on the "unearned" premiums as of January 1, 1906, which unearned premiums, or a portion of them, might become "earned" premiums on January 1, 1907; and that the "unearned" premiums as of January 1, 1906, which were carried forward as "re-insurance reserve" and upon which plaintiff now claims commissions, were not *earned* in the year 1905 (*i. e.*, during the life of the contract sued upon) but became earned during the year 1906, after the 1905 contract had ceased to exist, it having been terminated by the making of the new 1906 contract. Counsel however admit, in their printed argument, that *if* the 1905 contract sued upon had not been terminated at the end of that year, and plaintiff had continued to work under said contract during the year 1906, plaintiff at the end of the year 1906 would have been entitled to contingent commis-

sions on the "unearned" premiums as of January 1, 1906, and this because said premiums would have become earned *in 1906* and during the life of the contract.

Counsel for plaintiff contend, in substance, that the commissions for which plaintiff sues were earned during the year 1905 when, through his efforts, the policies were written and the premiums paid; that his right thereto became *vested* on January 1, 1906; that the *value* of that right, *i. e.*, the *amount* to be paid him, alone remained uncertain or contingent, which could not be determined until January 1, 1907, when all the policies written in 1905 had expired and all losses could then be figured and the net profits on the 1905 business determined, and that payment of the correct amount of commissions was merely postponed until it could be ascertained; that this vested right was not affected or relinquished by anything contained in the new contract of December 4, 1905, which related solely to the future relations between the parties from and after January 1, 1906, and that it is not shown by the evidence that said right was relinquished by any other act or agreement of the plaintiff and that by defendant's construction of the contract sued upon, as contained in his letter of September 8, 1905, and by his paying plaintiff, on June 26, 1906, the sum of $3,017.91, as commission on business done by plaintiff in the year 1904, which sum was based on the "re-insurance reserve" previously deducted from the premium receipts during said year 1904, defendant recognized the right of plaintiff to the balance of commissions here in question.

After careful consideration of the evidence and of the arguments of respective counsel in support of their contentions, we have reached the conclusion that the trial court erred in entering the judgment appealed from and in not entering a judgment in favor of plaintiff for the sum of $3,080.85, together with interest

thereon. We are of the opinion that, under all the facts and circumstances in evidence, plaintiff's right to the commissions here in question became vested in him at the end of year 1905, although the total amount of commissions to be ultimately paid him on account of premiums written and collected by him during said year could not definitely be determined until the expiration of the year 1906, and that his right to said commissions was not affected or relinquished by said new contract of December 4, 1905, or by his acts thereunder or by any other acts of his.

In the case of *Alabama Oil & Pipe Line Co. v. Sun Co.,* 99 Tex. 606, a contract under which certain rights had accrued was canceled by a new agreement, and the question before the court was whether the new agreement so far abrogated the old as to defeat a recovery on certain rights vested thereunder. The Court said (p. 611):

"It is true that parties to a contract may agree to cancel it and, if there be nothing to indicate a different intention, each party will be fully discharged from all liability under such contract. But the use of the word 'rescind.' or 'cancel,' will not necessarily have that effect. The liability in this case must be referred to the terms of the agreement to cancel and, in order to interpret that agreement, we must look to the intention of the parties, the character of the contract to be cancelled and to the situation of the parties at the time as well as to the attending facts and circumstances which throw light upon the question of intent. If it appears from these facts and circumstances that it was not the intention of the parties that the act of cancellation should have a retroactive effect to destroy previously vested rights, then the contract will be so construed as to preserve those rights." See also *City of New York v. New York Refrigerating Const. Co.,* 146 N. Y. 210, 215; *Hayes v. City of Nashville,* 26 C. C. A. 59, 80 Fed. 641, 646; *Dibble v. Dimick,* 143 N. Y. 549, 553; *Greene & Sons v. Freund,* 80 C. C. A. 387, 150 Fed. 721; *Singer Mfg. Co. v. Brewer,* 78 Ark.

202, 204; *Sackett v. Centaur Motor Co.,* 189 Ill. App. 372.

It is also contended by counsel for defendant that plaintiff is not entitled to a judgment in any amount because no office expenses, incurred by plaintiff in the year 1906 in giving the necessary attention to the risks on policies written in 1905, are considered by plaintiff in figuring the amount of his present claim, which is based on the "re-insurance reserve" of 1905. We do not think there is any merit in the contention. All the expenses of getting the business or premiums, contained in said "re-insurance reserve," had been charged against the entire premiums received during 1905 in plaintiff's account rendered on June 18, 1906, and by the settlement of that account on June 26, 1906, said expenses were satisfied. Furthermore, the contention of counsel is contrary to the previous practice of the parties, as is shown in the item of the account of June 18, 1906, relative to the 1904 "reinsurance reserve." Furthermore, by both the 1905 and the 1906 contracts it was provided that office expenses should be paid out of "excess brokerage commissions," etc., which the evidence shows more than covered all office expenses. Furthermore, by the 1906 contract it was provided that plaintiff should "oversee and regulate" the business of defendant's companies "outside of Cook County," and the evidence shows that after January 1, 1906, he did so, as he formerly had done, and that, as to the unexpired 1905 policies, he did whatever had to be done in precisely the same manner as he would have done had the 1905 contract been continued in force.

Counsel for defendant place great reliance on the case of *Mississippi Home Ins. Co. v. Adams & Boyle,* 84 Ark. 431, as sustaining their construction of the contract in question. The facts of the present case appear to be materially different from those in that case. Furthermore, in the contract here in question no special provision is made as to the settlement of

plaintiff's contingent commissions in the event of the termination of the contract, while in said *Adams* case there was the following provision: "This agreement may be terminated at any time by either party after giving thirty (30) days' written notice to the other, in which event payment of compensation as above provided shall be made, and *will be in liquidation of all payments* to the party of the second part by the party of the first part." And we do not think that any of the other cases cited by counsel sustain their position taken in this case. In those cases the facts are so at variance with those of the present case as not to be applicable.

By virtue of the instrument of writing or contract sued upon and under the facts in evidence, we think that the judgment to be here entered in favor of the plaintiff and against the defendant should not only be for said amount of $3,080.85, but should also include interest thereon, at the legal rate of five per cent. per annum, from June 22, 1907, to the present date. Section 2, ch. 74, Hurd's R. S. (J. & A. ¶ 6691); *A. B. Dick Co. v. Sherwood Letter File Co.*, 157 Ill. 325, 338; *Bauer v. Hindley*, 222 Ill. 319, 323. In a case tried before the court without a jury we can include interest in the judgment here entered. *Dean & Son, Ltd. v. W. B. Conkey Co.*, 180 Ill. App. 162, 183, and cases there cited. The interest on $3,080.85 at said rate from June 22, 1907, to January 22, 1915, is $1,168.15, which added to $3,080.85, makes the total sum of $4,249.

The judgment of the Superior Court of Cook county is reversed and judgment is entered in this court in favor of the plaintiff, Frank R. Thompson, and against the defendant, J. S. Frelinghuysen, in the sum of $4,249.

*Judgment reversed and judgment here.*

Finding of facts.—We find as facts that the plaintiff, Frank R. Thompson, made the contract or agree-

ment sued upon, dated August 3, 1905, with the defendant, J. S. Frelinghuysen; that he performed all services required to be performed by him thereunder as agent or representative of the defendant; that he acted as such representative thereunder until and including December 31, 1905; that he acted as the agent or representative of the defendant during the year 1906, but under another contract, dated December 4, 1905; that on January 1, 1907, there became and was due plaintiff from defendant a balance of $3,080.85 for certain commissions for services performed by plaintiff for defendant during the year 1905 and up to and including December 31, 1905, under the contract or agreement sued upon; that plaintiff at no time waived or relinquished the payment to him of said balance for commissions; and that no part of said sum has ever been paid plaintiff.