## HARRIS & SPEAR, Inc., v. CONCORDIA FIRE INS. CO. OF MILWAUKEE.

### No. 6894.

Circuit Court of Appeals, Ninth Circuit.
Dec. 18, 1933.

Young & Young, of Los Angeles, Cal., for appellant.

W. W. Hindman and E. Eugene Davis, both of Los Angeles, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an appeal from a judgment for defendant in an action at law upon a written contract of agency for the recovery of contingent commissions as specified in the contract. The only evidence offered was documentary. The case was submitted upon such evidence, stipulation of facts by counsel, and admissions by the pleadings. The court granted defendant's motion to find for defendant and against plaintiff. Upon findings of fact and conclusions of law judgment was entered for defendant.

The court found that on October 21, 1922, appellee and appellant's predecessors in interest entered into a written contract, a copy of which was made a part of plaintiff's complaint, by the terms of which the latter were appointed "General Agents" or "Managers" for appellee for the state of California, the contract to take effect and be in force on and after January 1, 1923. By the terms of the contract the said general agents or managers were allowed "a flat commission of thirty-five per cent of the net premiums written," and, in addition thereto, "a contingent commission of fifteen (15) per cent of the net profits of the business under their charge, said profits to be computed as of the 31st day of December, 1923, and annually thereafter on the business of each 'single' year so long as this agreement shall continue." The contract contained specific provisions for determining the net profits for any "single" year, and further provided: "In case of the termination of this contract no Contingent Commission or profit and loss statement shall be rendered until the expiration of six months from date of the termination of said contract; but said Contingent shall be settled as of the date of the termination of said contract."

The "Tenth" subdivision or section of the contract contained the following provisions concerning the termination of the contract:

"This contract may be terminated at any time by either party giving the other sixty (60) days notice in writing, at the expiration of which time this contract shall cease and determine. * * *

"In the event of such termination and after the expiration of the time named in said notice, all property and vouchers in the hands of said Managers, relating to the business of the Company, shall be turned over to said Company, and there shall be a complete adjustment and settlement of all matters between the parties hereto growing out of this agreement, upon the basis of its terms and conditions, and any balances due from either party to the other shall thereupon be paid, excepting as hereinbefore provided as to the Contingent Commission."

The court made additional findings as follows:

"That plaintiff received said statement of account and by telegraph of February 17th, 1926, and letter of February 18th, 1926, confirmed said statement so rendered by defendant and plaintiff and defendant by mutual agreement adjusted and determined the amount due one from the other, struck a balance and it was then and there determined and agreed that the balance due or to become due from defendant to plaintiff was the said sum of Fourteen Thousand Five Hundred Fifty-five Dollars ($14,555.00), and defendant thereupon and on February 25th, 1926, paid to plaintiff the said sum of Fourteen Thousand Five Hundred Fifty-five Dollars ($14,555.00) and plaintiff then and there received and accepted said sum in full satisfaction and final determination of all matters and things between plaintiff and defendant with reference to said contingent commission account.

"* * * That plaintiff is barred by paragraphs 1 and subdivisions 1, 2 and 3 of paragraph 2 of section 337 of the Code of Civil Procedure of the State of California and that the Statute of Limitations of this State has run as against the alleged claim of plaintiff herein."

Appellant's assignment of errors all go to the question whether the court below "erred in finding that the contract between plaintiff and defendant became terminated on June 29th, 1925, by notice of defendant to plaintiff and by mutual consent of the parties thereto," and "that plaintiff and defendant by mutual agreement adjusted and determined the amount due one from the other."

The portions of the notice of termina-

tion of the contract material to the questions presented on this appeal read:

"June 29, 1925

"Harris and Watson, Inc. (Formerly Labry and Harris and Watson, Inc.) Los Angeles, Calif.

"Gentlemen: Pursuant to Section 10, Paragraph 1, of our General Agency contract with you, dated the 21st day of October, 1922, and effective as of January 1st, 1923, which paragraph reads as follows:

"'This contract may be terminated at any time by either party giving the other sixty (60) days notice in writing, at the expiration of which time this contract shall cease and determine. It being, however, distinctly understood and agreed that the said Managers shall, upon request of said Company, immediately discontinue writing any policies for said Company and committing said Company on any risks either directly or indirectly.'

"The Concordia Fire Insurance Company of Milwaukee hereby gives notice in writing of the termination of said contract.

"Also, pursuant to the terms of the contract as set forth in the said paragraph and section, the 'Concordia' requests and instructs that you immediately discontinue writing any policies for said company, and from committing said company on any risks either directly or indirectly. * * *

"In accordance with Section 10, Paragraph 2, we will, after the expiration of the said sixty days notice of termination call upon you for all property and vouchers in your hands relating to the business and the Company, and in further pursuance of the contract, call to your attention that in the event of termination

"'there shall be a complete adjustment and settlement of all matters between the parties hereto growing out of this agreement, upon the basis of its terms and conditions, and any balances due from either party to the other shall thereupon be paid excepting as hereinbefore provided as to the Contingent Commission.'

"Please acknowledge receipt of this communication.

"Yours very truly,
"William E. Wollaeger, President."

It is clear both from the provisions of the contract and the notice of termination that two settlements were required to be made between the parties, one to be made within sixty days of the notice involving all matters excepting contingent commissions, and one to be made respecting contingent commissions within six months after such termination.

By letter of date February 13, 1926, appellee transmitted to appellant's predecessors in interest a "Statement of Contingent Commission," covering the period January 1, 1925–July 1, 1925. By letter of February 18, 1926, appellant's predecessor replied as follows:

"This is to acknowledge receipt of yours of the 13th accompanied by the Contingent Statement and to confirm my telegram to you of the 17th confirming the figures. * * *

"There are a few slight differences with our records in the statement. * * * The net difference between these two items is nominal and not worthy of a change in the statement and we accordingly telegraphed you our confirmation of the figures."

A letter of date March 1, 1926, to the president of appellee, in part reads: "This is to acknowledge receipt of your remittance of $14,555.00 together with the Supplementary Recapitulation covering the several small differences, for all of which we duly thank you."

It was stipulated "that subsequent to June 29, 1925, and continuously up to November, 1928, there were numerous transactions between plaintiff and defendant consisting of credits and debits with proper accounting therefor of return premiums arising by means of policies that were cancelled between said last mentioned dates, said policies having been written in defendant corporation prior to June 29, 1925, by plaintiff pursuant to the contract."

It was not until July 11, 1930, that appellant by letter of that date made claim for an additional amount as then owing on account of contingent commissions. The letter recites that the date thereof "marks the expiration of the last Concordia policy written," and calls attention to the fact that the statement of contingent commissions furnished February 13, 1925, relative to the settlement as of date July 1, 1925, showed a premium reserve as of that date in the amount of $83,639.94, in which it was claimed appellant "should have a substantial interest in the remaining portion of the premiums after deducting the net loss."

It is clear from the provisions of the contract that, upon a termination thereof, a final settlement was to be made both of "flat" and "contingent" commissions. The first mention of "Contingent Commission" is in the seventh subdivision of the contract

providing for a 15 per cent. commission on the "net profits of the business * * * to be computed' as of the 31st day of December * * * on the business of each 'single' year so long as this agreement shall continue." This seventh subdivision of the contract also provides how the "net profit" is to be computed, and concludes with the proviso that: "In case of the termination of this contract no contingent commission or profit and loss statement shall be rendered until the expiration of six months from date of the termination of said contract; but said contingent shall be settled as of the date of the termination of said contract." The tenth subdivision of the contract provides for its termination "at any time by either party" on sixty days' notice "at the expiration of which time this contract shall cease and determine. * * * In the event of such determination and after the expiration of the time named in said notice, * * * there shall be a complete adjustment and settlement of all matters between the parties hereto * * * excepting as hereinbefore provided as to the contingent commission." The exception last referred to clearly relates to the difference in the times when the respective commissions were to be adjusted and settled.

The language of the contract is not susceptible of any other construction than upon termination thereof a complete adjustment and settlement of all matters between the parties was to be arrived at, and when so arrived at the same was to be final. It is clear that adjustments were made both in respect to flat commissions and the contingent commissions. It does not appear that there was any controversy respecting the settlements reached. The contract provided that, upon the expiration of the sixty days' notice when the contract became terminated, there was to be "a complete adjustment and settlement of all matters between the parties * * * and any balances * * * thereupon be paid, excepting as hereinbefore provided as to the contingent commission." The provisions of the contract to which the words "hereinbefore provided" related recited that contingent commissions were payable annually on the net profits of the business "so long as this agreement shall continue," and, in case of termination, that "no contingent commission or profit and loss statement shall be rendered until the expiration of six months * * * but said contingent shall be settled as of the date of the termination of said contract." That the parties at the time of making these settlements considered they were to be final, or substantially so, is clearly indicated by the correspondence at the time. In the letter of the president of defendant, of date February 13, 1926, transmitting the "Contingent Commission Account" appears the statement: "I believe there are some small matters in abeyance—by that I mean small differences in the account and possibly some missing endorsements, etc.—but all of this will sooner or later be straightened out. We shall be very glad to assist you in having your books correspond with ours and we feel that you will also assist us to bring to a close any and all matters still open." Replying of date February 18, 1926, the letter on behalf of plaintiff, after referring to two items in the statement regarded as "nominal and not worthy of a change," proceeded to say: "In the matter of small differences that might be in abeyance, pro and con, between the two offices, you can feel assured of our hearty cooperation at all times." If plaintiff's predecessors were of opinion there remained in abeyance for future settlement a claim for contingent commissions which might aggregate the sum of ten thousand or more dollars, it is hardly conceivable that some mention of it would not have been made at the time instead of some five years later.

The case of Thompson v. Frelinghuysen, 191 Ill. App. 204, is cited as supporting appellant's position. A brief excerpt from the opinion in that case discloses that the contract therein under consideration while dealing with the same subject-matter—contingent commissions—did not contain provisions similar to those in the contract in the case at bar. From the opinion we quote: "It is also to be noticed that in the contract of August 3, 1905, no special provision is made for a settlement of plaintiff's contingent commissions, in the event of the termination of said contract by notice or by mutual agreement."

In the instant case the contract specifically provides that "said contingent shall be settled as of the date of the termination of said contract," and further fixes the time when a "contingent commission or profit and loss statement shall be rendered." Whether the agents were entitled to some adjustment of contingent commissions based on the "Premium Reserve" shown as of date of the termination of the contract is a question not here involved. The contract fixed the time with reference to which a determination of contingent commissions should be made. Such a determination was made and the amount so agreed upon was paid.

Judgment affirmed.