MONARCH CYCLE MFG. CO. v. ROYER WHEEL CO.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1900.)

No. 741

1. APPEAL—REVIEW—INSTRUCTIONS.
    The charge of a trial court upon a particular issue cannot be reviewed where no exception was taken thereto, nor to the refusal of a special instruction on the subject, or where the special instruction was erroneous because of other matters embodied therein which justified its refusal as a whole.

2. SALES—ENTIRETY OF CONTRACT—RENUNCIATION BY PURCHASER.
    A contract for the sale and purchase of 2,000 bicycles at specified prices, monthly shipments to be made as should be specified by the purchaser, is an entire contract; and the failure of the purchaser to pay for deliveries made, within the time stipulated, is not a renunciation of the contract which justifies the seller in treating it as abandoned, and absolves him from his obligation to make further deliveries thereunder, in the absence of a provision therefor in the contract, unless there is a refusal by the purchaser to pay, in such terms as to evince a purpose on his part to renounce the contract.

3. SAME—ACTION BY PURCHASER FOR NONDELIVERY—PLEADING.
    Under the provisions of the Ohio Code, requiring a liberal construction of pleadings, a counterclaim by a purchaser for the recovery of damages because of the alleged failure of the seller to deliver goods under a contract is sufficient, after judgment, to sustain a recovery of such damages, although it does not allege that the purchaser was ready and willing to receive and pay for the goods, where, under the contract, he had 10 days after delivery in which to settle for the goods either by cash or note.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

On the 10th day of October, 1895, the Monarch Cycle Manufacturing Company entered into a contract with the Royer Cycle Company, at Cincinnati, Ohio, by a certain memorandum of agreement, as follows:

"That in consideration of the prices, terms, and conditions hereinafter named on bicycles manufactured by said Monarch Cycle Manufacturing Company,

party of the second part agrees to, and does hereby, purchase of the said party of the first part, for delivery as hereinafter specified, 1,500 bicycles, at the following prices, viz.:

Deliveries.

Nov. Dec. Jan. Feb. Mar. Apl.　　　　　　　　　　　　Total, 750.

| | Price | |
|---|---|---|
| Model No. 31, at | $40 00 | 50 |
| Model No. 30, at | 37 50 | |
| Gent's Defiance, No. 29, at | 36 00 | 20 |
| Ladies' Defiance, No. 25, at | 37 50 | 20 |
| Youths' Defiance, No. 26, at | 30 00 | |
| Misses' Defiance, No. 26, at | 30 00 | 10 |
| Boys' Defiance, No. 24, at | 26 00 | |
| Girls' Defiance, No. 24, at | 26 00 | |

"Balance of machines to be shipped within the season of 1896. Specifications, etc., to follow later. F. o. b. Chicago.

"Terms: Net 60 days, less discount for prompt cash, in ten days, as follows: On November deliveries, 5 per cent.; on December deliveries, 4 per cent.; on January deliveries, 3 per cent.; on February deliveries, 2½ per cent.; on March deliveries, and thereafter, 2 per cent. Full settlement of all invoices must be made within ten (10) days from date of same, either by cash, less the cash discount, or by notes, the maturity of which shall conform to the maturity of the respective invoices. Party of the second part agrees to settle all accounts according to the terms above specified; pay transportation charges on all advertising matter furnished by the party of the first part, and also on goods sent for repairs.

"Any verbal understanding or agreement had with any traveling man or salesman representing the party of the first part, which is not set forth in this agreement, shall be void and of no effect whatever. This contract must be approved by an officer of the Monarch Cycle Manufacturing Company, countersigned by such officer, before it can go into effect and become binding on either party."

On December 30th the parties entered into a further agreement as follows:

"That in consideration of the prices, terms, and conditions hereinafter named on bicycles manufactured by said Monarch Cycle Manufacturing Company, party of the second part agrees to, and does hereby, purchase of the said party of the first part, for delivery as hereinafter specified, 2,000 bicycles, at the following prices, viz.:

| | |
|---|---|
| Ladies' Defiance, No. 32a | $41 50 |
| Gent's Defiance, No. 31a | 40 00 |
| Gent's Defiance, No. 30 | 35 00 |
| Gent's Defiance, No. 29a | 35 00 |
| Ladies' Defiance, No. 25a | 35 00 |
| Misses' Defiance, No. 23a, 26-in. wheels | 30 00 |
| Girls' Defiance, No. 23a, 24-in. wheels | 26 00 |
| Youths' Defiance, No. 22a, 24-in. wheels | 30 00 |
| Boys' Defiance, No. 22a, 24-in. wheels | 26 00 |

"An additional charge of $1.50 for brake on Model No. 25. Party of the second part agrees to specify monthly shipments to be made up to July 1, 1896, covering the entire number of wheels purchased. F. o. b. Chicago.

"Terms: 60 days net, less cash discount if paid at our office strictly within ten (10) days, as follows: On December deliveries, 4 per cent.; on January deliveries, 3 per cent.; on February deliveries, 2½ per cent.; on March deliveries, and thereafter, 2 per cent. Full settlement for all invoices must be made within ten (10) days from date of same, either by cash, less the cash discount, or by notes, the maturity of which shall conform to the maturity of the respective invoices. Party of the second part agrees to settle all accounts according to the terms above specified; pay transportation charges on all advertising matter furnished by the party of the first part, and also on goods for repairs.

"This agreement shall go into immediate effect when approved as hereinafter provided, and remain in effect until November 1, 1896, unless sooner terminated by mutual consent, or failure of either party hereto to keep agree-

ments herein contained. Any verbal understanding or agreement made with any traveling man or salesman representing the party of the first part which is not set forth in this agreement shall be void and of no effect whatever. This contract must be approved by an officer of the Monarch Cycle Manufacturing Company, and countersigned by such officer, before it can go into effect and become binding on either party."

The plaintiff, alleging default in failure to pay for certain goods sold and delivered to the defendant, brought suit in the circuit court of the United States to recover upon two causes of action: First. Upon an account for goods sold and delivered, copy of which is attached to the petition. Second. Upon alleged breach of the agreement of December 30, 1895, in that defendant had refused to specify the months in which shipments were to be made, as therein agreed, and had only specified 219, leaving 1,781 bicycles to be specified prior and up to July 1, 1896; that defendant was frequently requested to give such specifications, which it did not do, and refused to receive any more bicycles; that defendant violated said contract by canceling all orders for shipments given by defendant to plaintiff which had not been filled, and also terminated said contract as to the 1,781 bicycles not specified or delivered, and refused to accept any more bicycles under said contract. There was a general allegation that plaintiff had performed all the terms and conditions of said contract on its part to be performed, and that it had been damaged by reason of the refusal of defendant to take said 1,781 bicycles in the sum of $17,810, wherefore plaintiff prays judgment in the sum of $3,313.68, with interest from September 27, 1896, and on $17,810, with interest from July 10, 1896. The defendant's answer claimed some small credits on the first cause of action, and, for answer to the second cause of action, says that the agreement of December 30th was simply a modification of the contract of October 10, 1895, and denies that the plaintiff complied with the contract, but avers that it refused to deliver wheels, to the great damage of defendant, as set out in the answer. Defendant claims that, by reason of the failure and neglect to keep the agreement, defendant is absolved from the contract. By way of counterclaim, defendant claims 100 wheels, by the agreement of October 10, 1895, were to be shipped during the month of November, and also alleged a breach of an agreement on the part of plaintiff to furnish catalogues and printed matter to enable the defendant to carry on its business of selling said wheels; and certain allegations are made in the counterclaim as to the contracts made and expenditures incurred on the strength of plaintiff's agreement. It is averred that plaintiff neglected and refused to send the printed material, and did not fill the orders sent to it by defendant; did not ship wheels of the kind ordered; that the defendant frequently called upon the plaintiff, without success, for the wheels ordered and demanded. Defendant further alleges that, after trying in vain to get its orders filled, it was compelled to abandon the contract, and notified plaintiff of so doing. Defendant further alleged its loss under said contract for wheels not furnished in the sum of $10,000, for which it prays judgment. The reply takes issue upon the allegations of the answer and counterclaim, and avers: That defendant wrongfully canceled orders for wheels under the contract on or about the 1st of May, 1896. Prior to said date the defendant refused and neglected to pay for said wheels delivered by plaintiff, and neglected to specify the monthly shipment of wheels according to the contract. That the plaintiff refused to deliver any more wheels until the ones previously sent had been paid for according to contract, and that the cancellation of the contract was wholly due to the default of defendant. Denies that it ever agreed to furnish printed material, and denies the allegations of special damages contained in defendant's answer and counterclaim. Upon these allegations the parties went to trial, and a verdict was returned finding upon the first cause of action in favor of plaintiff, on the second cause of action in favor of the defendant, and also in favor of defendant upon the counterclaim set up against the plaintiff. At the trial testimony was introduced on the part of plaintiff tending to show that defendant had failed to make settlement for wheels shipped, or to promptly pay for same, and that defendant was indebted to plaintiff on account of the contract, for wheels shipped, in the sum set up in the first cause of action, and that about the 20th of April, 1896, defendant having failed to make settlement for previous shipments, the plaintiff declined

to make any further shipments; that on or about the 1st of May the defendant notified plaintiff that it would make no further orders, and canceled any unfilled orders, because of the alleged breach of contract on part of plaintiff in not furnishing wheels. The defendant offered testimony tending to show repeated demands for wheels, and nonfulfillment of orders to plaintiff to furnish wheels, and that finally, because of the failure to obtain wheels demanded by it, on the 1st day of May, 1896, it terminated any further obligation under the contract.

Lawrence Maxwell, Jr., for plaintiff in error.
John W. Herron and Charles W. Baker, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

As to the verdict on the first cause of action, for wheels sold and delivered by plaintiff to defendant, there is no assignment of error, and the verdict and judgment in that respect are not complained of.

Under the second cause of action set up in the petition, the plaintiff, having failed to recover, alleges that certain instructions of the court in respect thereto were erroneous. It is alleged that the court erred in charging the jury as to the effect of failure of the defendant to specify the wheels to be shipped under the contract with plaintiff. An examination of the record discloses that the plaintiff, in its eighth request, asked the court to charge the jury upon this subject that if the defendant violated said contract, in neglecting to furnish specifications for monthly shipments up to July 1st, it could not complain of either delay in deliveries, or the refusal to make shipments. This is the only request separately made upon the effect of the failure to furnish specifications, and is the only reference to the matter, except in the twelfth request, wherein the court was requested to charge the jury that if the delay in shipments was due to the default of the defendant in not properly sending specifications under the contract, or in not making settlements for wheels already furnished, as provided in the contract, that the plaintiff was justified in not making further shipments, and the defendant had no right to cancel the contract on May 1st, and in that event the plaintiff was entitled to recover damages for the breach of the contract in refusing to accept the 1,781 wheels. There is no exception to the refusal to give the eighth request, nor do we find any to that part of the charge of the court covering the subject. On that matter the court charged the jury as follows:

"Now, as to the matter of specifications. Plaintiff's complaint in this respect is that the delay in deliveries was due to the want of specifications. That is a question of fact for the jury to determine from the evidence. You will remember the evidence upon both sides bearing upon that point. I believe it was stated in substance by the witness Herron that at some time he gave a general direction, which could always be followed unless there were special specifications and directions. On the other hand, you heard what the witness for the plaintiff stated,—that they were embarrassed and hindered in making deliveries upon orders for want of specifications. It is for you to determine whether there was any delay caused thereby. I should say, too, that there is testimony tending to show that the plaintiff from time to time suspended deliveries for nonpayment,—for failure to pay in accordance with the terms of the contract; and it is for you to look to the evidence and determine whether there

was any delay which was caused by a failure to make specifications, or whether it was caused by the failure to comply with the terms of the contract in regard to payments."

This manner of submitting the questions to the jury seems to have been satisfactory to the parties. Request 12 embodied other matters, which we will have occasion to consider later, justifying the court in refusing to give it. It is well-settled that unless a request is entirely sound the court does not err in refusing it. As the record does not present the question in due form, we do not deem it necessary to consider the construction of the contract as to the requirement for specifications in advance of wheels required by defendant.

Another question involved in considering plaintiff's second cause of action arises upon the ninth request of the plaintiff, which is as follows:

"That if the defendant violated said contract, in neglecting or refusing to make remittances from time to time for wheels already furnished, and as required by the contract, that the plaintiff was not required to make further shipments until settlements were properly made under said contract; and, if the defendant violated the contract in either of the above particulars, the plaintiff was justified in stopping shipments."

Upon that subject the court said to the jury:

"In the first place, gentlemen, we will turn to the plaintiff's case. It was the duty of the plaintiff to deliver these goods, under the terms of the contract, upon the orders of the defendant; and it would not be justified in refusing to deliver goods upon the orders of defendant because of the failure of defendant to make any particular payment for goods delivered, or to always conform to the strict requirements of the contract with reference to payments. In other words, gentlemen, the plaintiff could not excuse itself from delivering the goods because of some particular payment which the defendant had not made in compliance with the terms of the contract, nor because in other instances defendant had not complied strictly with the terms of the contract. It could not excuse itself on that ground. But if the defendant failed to make payments, failed to comply with the terms of the contract, and this failure was accompanied by conduct indicating an intention on the part of the defendant to abandon the contract,—in the language of the books, to set the plaintiff free and put an end to the contract,—then the plaintiff would be warranted in refusing to make further deliveries. Now, I want you to understand that, gentlemen, if in the refusal to make payments, taking into consideration all the circumstances of the case, looking at the surroundings, looking at the conduct and behavior of defendant, at what it did and what it said, through its agents and officers and correspondence, and all that, it was apparent that the defendant intended to abandon the contract, to put an end to it, if it was refusing payment because it did not want to go on with the contract; if that appears, if that is shown by the conduct of the defendant, and by the circumstances under which these payments were refused, or not made in strict conformity with the contract,—then the plaintiff would be warranted in refusing to make any further deliveries under the contract. But unless that appears,—if it was only a dispute about some particular payment, or if the requirements of the contract were not strictly complied with, and there was nothing to indicate an intention to abandon the contract on the part of the defendant,—the plaintiff would not be justified in refusing to deliver, but must go on and deliver under the contract, and seek its remedy, if necessary, in some other way."

And again:

"Now, gentlemen, you are to look carefully at this testimony, and it is for you to say, and not the court, whether on the 19th of April, 1896, when deliveries were suspended,—and, I believe, it is conceded, ended,—whether the plain-

tiff was justified in ending the delivery of goods, in putting an end to the delivery of goods under this contract. If the evidence does not show an intention of abandonment by the defendant, growing out of his conduct with reference to these payments; if, notwithstanding the failure to make payments at the times and in the manner stipulated in the contract, the evidence shows that it was the intention of the defendant to go on with the contract,—then the plaintiff was not justified in stopping deliveries, and, if it was not justified in stopping deliveries, it will not be entitled to recover damages on the second cause of action set forth in the petition. If, on the other hand, the evidence convinces you—and the burden of proof is on the plaintiff to show it—that the conduct of the defendant was such that the plaintiff was warranted in assuming that the defendant intended to abandon this contract, and that he did abandon it without cause or justification, then the next question for you to consider will be the question of damages which the plaintiff should recover upon the second cause of action."

As the jury found in favor of the defendant upon this branch of the case, it is not necessary to consider the charge of the court upon the measure of damages. In seeking to recover upon its second cause of action, the theory of plaintiff's case was that the defendant, by its wrongful failure to make remittances and payment for wheels shipped under the agreement, and in accordance with the terms thereof, was guilty of a breach of contract, and the plaintiff was entitled to treat it as such, and sue for damages for nonfulfillment on the part of the defendant. The defendant claims this failure to make prompt remittance was not a breach of the contract, and that plaintiff, by not shipping wheels, broke the contract. These divergent claims make it necessary to examine the law of the subject. In this connection numerous cases have been called to our attention, but, having a decision of this court directly in point, we are content to rest our conclusion upon it. In Cherry Valley Iron Works v. Florence Iron River Co., 12 C. C. A. 306, 64 Fed. 569, where a contract had been entered into for the sale of 10,000 tons of ore, deliverable in seven equal parts, in each of the seven months named, for the price of $37,500, and in which the vendor reserved the right to cancel the contract in reference to the undelivered ore if the vendee should fail to pay for the delivered ore, Judge Severens, in delivering the opinion as to the construction of this agreement, calling attention to the right of cancellation for nonpayment for partial deliveries, said:

"It will be convenient to consider, in the first place, what would have been the effect of the contract had that stipulation been omitted. In that case it would have been a contract simply for the sale of 10,000 tons of ore, deliverable in seven equal parts, in each of the seven months named, for the price of $37,500, payable in seven equal installments, payable during those months, respectively. The contract would have been entire, and would have bound the vendor to deliver the whole amount, and the vendee to pay the whole price. The fact that there were subordinate stipulations in regard to the dates of delivery and of payment would not break it up into separate contracts for each installment of the ore. It is sufficient to cite upon this point the cases of Iron Co. v. Naylor, 9 App. Cas. 434, in the English house of lords, and Norrington v. Wright, 115 U. S. 188, 203, 6 Sup. Ct. 12, 29 L. Ed. 366. And, the contract being entire, as soon as the parties had entered upon its performance by partial delivery and payment the mere failure of the vendee to make the subsequent payments would not of itself absolve the vendor from proceeding with the deliveries. It may be that a downright refusal to make payment, or other equivalent conduct evincing a purpose to renounce the contract, would entitle the other party to

treat the contract as abandoned, and relieve him from the obligation to proceed further in its execution. Winchester v. Newton, 2 Allen, 492. In respect to the obligation of the vendee to accept delivery of the goods under such a contract, where the vendor fails to comply with its stipulations with regard to the time and mode of delivery, it was held in Norrington v. Wright, supra, that he was entitled to insist upon a continued adherence to its terms. This was because they were of the substance of the thing contracted for. But the duty of the vendor, notwithstanding a mere failure of the vendee to make payment of money, not evincing a renunciation of the contract, stands upon a different ground, as pointed out in that opinion, and results, also, from a comparison of the actual decision in that case with other cases distinctly involving the vendor's duty in those circumstances,—among them the case of Iron Co. v Naylor, which it recognizes as authoritative."

In the absence of a clause permitting cancellation of the agreement upon nonpayment for any given shipment of bicycles, the contract under consideration would be practically the same as the one supposed by Judge Severens, and would fall within the principles thus stated by the court. In the present case the contract was an entire one for the purchase and sale of 2,000 bicycles at certain given prices; monthly shipments to be specified, covering the entire number of wheels purchased. This contract bound the vendor to deliver the whole number of wheels, and the vendee to specify and receive the whole number. It was an entire contract, not a number of contracts for the sale and delivery of bicycles, and the stipulations for specifications and separate monthly shipments did not have the effect in this case to break the agreement into separate contracts for each shipment of bicycles specified. We are of opinion that the mere failure to pay for a number of bicycles specified to be delivered under the contract would not necessarily be a renunciation of the agreement which would authorize the plaintiff to treat the same as abandoned by defendant, and therefore absolve it from the obligations of the contract. The vendor is still bound by the terms of its agreement. It has agreed to furnish 2,000 bicycles. It is bound to fulfill the contract, in the absence of such emphatic refusal to carry out the terms thereof as would amount to a renunciation of it. These principles are substantially recognized in Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, cited in the opinion of Judge Severens. Examining the charge of Judge Thompson on this subject, above quoted, we are of opinion that it is in substantial harmony with the doctrine laid down in the Cherry Valley Iron Works Case. We therefore find no error in the submission of this case to the jury upon the second cause of action.

As to the recovery had upon the counterclaim set up by the defendant, the claim is made, that the same, as pleaded, does not state a cause of action upon which a recovery can be had. As no objection was taken in the court below to the form of pleading the counterclaim, nor any objection reserved as to the admission of testimony in support thereof, upon the principles of liberal construction established by the Ohio Code, especially after verdict and judgment, this objection is not well founded, if a recovery could have been had upon the counterclaim for any sum. The counterclaim avers the entering into the contract on October 10, 1895, and that said contract contained an agreement on the part of plaintiff that it would ship to the

defendant during the month of November, 1895, 100 wheels of certain models. It is said there is no averment that the wheels were not delivered, but we find in a subsequent part of the pleading the general allegation that "defendant frequently called upon the plaintiff, without success, for wheels ordered, and demanded that plaintiff fill the contract promptly, but without success." This may be considered to be equivalent to an averment that the wheels were not shipped or delivered. It is urged that this is an action, as far as the counterclaim is concerned, for an alleged breach of contract to deliver bicycles, and also certain printed material which it is alleged plaintiff had agreed to furnish. In either aspect it is an action for goods agreed to be delivered by the vendor, and the claim is that the essential averment that the vendee was willing and ready to receive and pay for the goods as provided for in the contract was not contained in the counterclaim. It is true, as a general rule, in an action by the vendee for nondelivery of goods, it is essential to aver and prove that the vendee himself is ready and willing to perform the contract on his part; the principle of such rule being that the vendee cannot enforce a contract against the vendor without averring performance on his part, or an offer to perform, averring readiness and willingness so to do. 2 Benj. Sales, 897; Simmons v. Green, 35 Ohio St. 104. In the present case the goods were not to be paid for in cash, but it is stipulated full "settlement of invoices must be made within ten days from date of same, either by cash, less the cash discount, or by notes, the maturity of which shall conform to the maturity of the respective invoices." The demands for the goods, as averred in the counterclaim, required the plaintiff to deliver the same. After such demand the plaintiff was in default until the goods were delivered. The principle requiring the averment of readiness and willingness to perform is established in cases where delivery and payment are to be concurrent acts. By the stipulations of this contract the defendant had 10 days in which to settle either by cash or giving a note. In the aspect of the case, as left by the pleading and the testimony, the plaintiff was in default for nondelivery of goods, which was an act required of it before the 10 days would begin to run in which the defendant might elect to settle by cash or note. This conclusion renders it unnecessary to determine whether the proof of demands, having been admitted without objection, would not be sufficient, under the Ohio Code, to establish readiness and willingness to perform, and support the judgment, where no error is assigned in the court below, based upon the failure of sufficient allegation in the pleading to justify the proof. Liberally construed at this stage of the case, we think the counterclaim contains allegations sufficient to support the judgment. Finding no error in the record and proceedings, the judgment of the circuit court is affirmed.