## P. J. CARLIN CONST. CO. v. GUERINI STONE CO.

(Circuit Court of Appeals, First Circuit.   April 2, 1917.)

No. 1256.

**1.** CONTRACTS ⊜303(4)—PERFORMANCE—DISCHARGE BY OTHER PARTY'S BREACH.

Where a building subcontract required the completion of the work within 300 days, but provided that, if the subcontractor was delayed by the default of the general contractors or others, the time should be extended for a period equivalent to the time lost, delays by the general contractors, interfering with the progress of the work by the subcontractor, did not justify it in declining to complete the work, though under another provision of the contract it was entitled to damages for such delay.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1424-1433.]

**2.** DAMAGES ⊜30—ELEMENTS—BREACH OF CONTRACT.

Where a building subcontractor, because of breaches of the contract by the general contractors, refused to complete the work and sued for damages, the conversion by the general contractors to their own use of materials, tools, and machinery of the subcontractor, left on the premises when it ceased work, was not an element of damages, and evidence thereof should not have been admitted.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 222.]

**3.** CONTRACTS ⊜261(3)—PERFORMANCE—DISCHARGE BY OTHER PARTY'S BREACH.

Where a building subcontract, calling for the performance of labor and the furnishing of materials over a long period of time and involving large expenditures, in addition to stipulating for monthly payments in advance of 85 per cent. of the cost of the work actually erected, contained a provision that the general contractors thereby contracted to pay at the time, in the manner, and upon the conditions therein set forth, the stipulation as to the time of payment was material and of the essence of the contract, and its breach justified the contractor in declining to complete the work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1176.]

**4.** CONTRACTS ⊜176(1)—CONSTRUCTION—QUESTIONS FOR COURT.

The ascertainment from the language of a building contract, its subject-matter, and the surrounding circumstances of the intention of the parties as to whether the time of payment is a material obligation, the breach of which will justify the contractor in declining to complete the work, involves the construction of a written contract, and is a question for the court, though it calls for the determination of a question of fact.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767, 1041; Trial, Cent. Dig. § 326.]

**5.** CONTRACTS ⊜303(5)—PERFORMANCE—DISCHARGE BY OTHER PARTY'S BREACH.

A building subcontract required the subcontractor to furnish and set in position, including the concrete backing, all imitation of sandstone, and to construct interior concrete walls, etc., and provided for payment therefor of $64,750, in monthly payments on account not exceeding 85 per cent. of the cost of the work actually erected, on requisitions on a form to be supplied by the general contractors. A subsequent paragraph required a subcontractor, at the option of the general contractors, to also set all granite walls, etc., for 40 cents a square foot surface. *Held*, that as the monthly payments to be made in advance were for the concrete work and to come out of the $64,750, and as there was no provision for monthly payment for setting the granite, the general contractors were not guilty of a breach of contract, justifying the subcontractor in refusing to complete the work, because they failed to honor requisitions

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

241 F.—35

which included advance payment for the granite work in the amount demanded.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1434–1439½.]

6. CONTRACTS ⬤➡346(3)—ACTIONS FOR BREACH—EVIDENCE ADMISSIBLE UNDER PLEADINGS.

In a building subcontractor's action for breach of a contract requiring monthly payments of 85 per cent. of the actual cost of the work erected, the bill of complaint alleged that the subcontractor's requisitions for payments demanded payment in accordance with the terms of the contract of the sums due for work performed. *Held* that, without an amendment of the complaint to allege a modification of the contract, evidence should not have been admitted that the parties had agreed upon a unit basis of $1.07 per cubic foot as a basis for determining the amount to be paid, and that the requisitions were in accordance with that agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1719.]

7. CONTRACTS ⬤➡274—ACTIONS FOR BREACH—NATURE OF REMEDY—"TERMINATE."

Where, because of general contractors' breach of the contract, a subcontractor notified them that it terminated the contract and would proceed no further with the work, but would hold the general contractors liable for damages for the breach, the word "terminate" simply meant that the subcontractor declined to go on and complete the work, and did not prevent the subcontractor from suing on the special contract on the theory that it had been rescinded.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1202–1206.

For other definitions, see Words and Phrases, First and Second Series, Terminate—Termination.]

8. DAMAGES ⬤➡124(1)—MEASURE OF DAMAGES—BREACH OF CONTRACT.

Because of general contractors' alleged breach of a contract, a subcontractor refused to complete the work and sued for damages. A provision of the contract required the general contractors to reimburse the subcontractor for any loss caused by delay on the part of the general contractors, and there had been such delay. *Held*, that the subcontractor was entitled to recover, if at all, the reasonable expenditures incurred in the performance of the contract, less payments made and materials on hand, damages due to the delays not included in the expenditures and attributable to the general contractors, and the profits that would have been realized from performing the contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 326–329, 336.]

9. DAMAGES ⬤➡218—MEASURE OF DAMAGES—INSTRUCTIONS.

In such action, an instruction that the jury could consider the reasonable expenditures incurred by the subcontractor, the unavoidable losses incident to stoppage of the work, the amount of work actually performed, the amount the subcontractor was actually entitled to by reason of such work at the contract price, and the profits which it could have made; that the items to be taken into account were the outlays, less the material on hand, the amount of work actually performed, and the profits, if any, which were not speculative; and that the measure of profits ·was the contract price, less the expense of carrying out the contract—embodied a duplication of elements, and was misleading.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 560–562.]

In Error to the District Court of the United States for the District of Porto Rico; P. J. Hamilton, Judge.

Action by the Guerini Stone Company against the P. J. Carlin Construction Company. Judgment for plaintiff,. and defendant brings error. Reversed and remanded.

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John C. Wait, of New York City (Charles Hartzell, of San Juan, Porto Rico, and Howard G. Wilson, of New York City, on the brief), for plaintiff in error.

Edward S. Paine, of New York City (Eugene Congleton, of New York City, on the brief), for defendant in error.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is a writ of error from a judgment, in favor of the Guerini Stone Company against the P. J. Carlin Construction Company, entered in the United States District Court for Porto Rico, in an action brought by the former against the latter to recover damages for an alleged breach of contract. The case has been twice tried before a jury, and each time a verdict has been found in favor of the plaintiff. At the conclusion of the first trial the plaintiff, feeling aggrieved in the amount of the verdict, prosecuted a writ of error to the Supreme Court, and a new trial was granted. The opinion of the court is reported in 240 U. S. 264, 36 Sup. Ct. 300, 60 L. Ed. 636, where a general statement of the case will be found.

The grounds upon which the new trial was granted were: (1) That the obligations of the defendant under the eleventh paragraph of the contract were unduly limited and practically annulled by the rulings of the trial judge; that it was error to read into the subcontract, to which the plaintiff and defendant were parties, certain provisions contained in the general contract, between the defendant and the government, and relieve the defendant from liability for damages due to delays resulting from "the action of the representatives of the government in changing foundations" or "in suspending or stopping the work": (2) that the ruling of the trial court—that "if there was delay in the furnishing of the granite, there could have been no liability under the subcontract for such delay in money, but such a condition was to be remedied by an extension of time for completion as therein provided"—was error; that paragraph 11 of the subcontract bound the "defendant to reimburse plaintiff for any loss caused by delay resulting from defendant's failure to provide labor and material not included in the subcontract," and for loss caused by delay in providing granite and foundations; that the extension of time provided for in paragraph 7 was inserted for the purpose of relieving the subcontractor from "liability to liquidated damages imposed upon [him] * * * by paragraph 6 for failure to complete his work within the time therein limited," and could not "properly be construed to deprive him of his right under paragraph 11 to reimbursement for losses attributable to delays assumed by the general contractor"; and (3) that the court erred in excluding an "estimate of the total cost to plaintiff of the doing of the work called for in the subcontract," to the effect that it could be done for $53,012 and at a profit of $9,700; that profits based on such testimony were not contingent and speculative, and that "no more definite or certain method of estimating profits could well be adopted than to deduct from the contract price the probable cost of furnishing the materials and doing the work." These were the grounds upon which the judgment was vacated.

The court, however, passed upon alleged errors assigned to the refusal of the trial judge to instruct the jury in accordance with two requests for rulings, as to both of which it held there was no error. The first of these requests was held to have been properly refused, on the ground that the evidence failed to show that the requisitions, which the plaintiff was bound by the contract to submit before payments could be required, were based upon the cost of actual work erected, or that a unit price had been agreed upon that "might be employed in making up the requisitions." And the other request was held to have been properly refused for the reason that its application had not been "confined to the case of the plaintiff being found entitled to recover upon the theory that the contract was rightfully terminated by the notice of May 22, 1912"; that other grounds of action were declared on to which the instruction would not be applicable.

In the concluding paragraph of the opinion, the court said:

"Exceptions were taken to the refusal of certain other instructions requested by plaintiff with the object of basing a recovery of damages, including profits, upon the ground of plaintiff having been prevented by defendant's acts from performing its contract within the time specified or a reasonable extension thereof, or on the ground that defendant's refusal to make payments and other breaches of contract were so unreasonable and inexcusable as to indicate an inability or unwillingness on its part to carry out the contract or to amount to a refusal to perform it in the future, *such as to justify plaintiff in stopping work.* But these exceptions have not been fully argued, and the requests are perhaps wanting in accuracy; hence we pass them without consideration."

It is apparent, therefore, that the Supreme Court did not pass upon the question whether the plaintiff was justified in declining to go on and complete the work under the contract, either because of the defendant's alleged failure to make payments as required by the contract, or because of the alleged prevention of performance of the contract by the plaintiff, within the time specified or a reasonable extension thereof, through delays attributable to the defendant.

The present writ of error is prosecuted by the defendant. Many errors are assigned, but the only available ones relate to the admission or exclusion of evidence and to instructions which were given to the jury or refused.

The evidence discloses that, on the 22d day of May, 1912, the plaintiff wrote the defendant, notifying it that it terminated the contract, would proceed no further with the work and should hold defendant liable for damages for its breach.

One of the grounds on which the action proceeded was that the plaintiff had been prevented from performing its contract within the time agreed upon or a reasonable extension thereof, through defendant's delay in providing the foundations of the building, in furnishing the granite to erect the basement walls, and in stopping plaintiff's work on the 9th of March, 1912, until the foundations were underpinned, and that, because of this, the plaintiff was justified in declining to go on and complete its work under the contract.

As bearing upon this view of the case, the defendant requested the court to charge the jury that the plaintiff was not justified in terminat-

ing the contract because of delays. This request was refused and the defendant excepted. It is covered by assignment of error No. 41.

[1] Whether these delays constituted a breach which would entitle the plaintiff to maintain an action for damages under paragraph 11 of the contract, provided it went on, or held itself ready to go on, and complete the work, or whether they constituted a breach which would justify the plaintiff in declining to go on and perform the balance of the work, are, in view of the terms of the contract, quite different propositions. It is plain, as held by the Supreme Court, that under paragraph 11 of the contract the defendant would be liable to respond in damages for delays in the material progress of plaintiff's work attributable to defendant's failure to provide labor and materials, and to its failure to provide foundations and granite, if plaintiff completed, or stood ready to complete, its contract. But, in view of the provisions of the contract, it does not follow that, if the plaintiff was delayed in completing its work within the 300 days specified in paragraph 6, it could decline to go on and complete the same, for it appears by paragraph 7 that the time for completion was not limited to 300 days from the date upon which the building was ready to receive its work and after it was notified to proceed, as delays of this character were not to be taken into consideration in making up the 300 days within which the plaintiff was required to perform the contract. In paragraph 7 it is provided:

"Should the subcontractor be obstructed or delayed in the prosecution or completion of the work by neglect, delay, or default of the owner, the architect, the general contractors, or of any other contractors employed by them upon the work, or by alterations which may be required in said work, or by any damage which may happen by fire, lightning, earthquake, or cyclone, or by the abandonment of the work by the employés through no fault of the subcontractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid," etc.

This provision makes it clear that delays occasioned the plaintiff by the owner, the general contractor, or by alterations which might be required in the work, were not to excuse the plaintiff from going on and completing the contract, but were to operate as an extension of the time, or were not to be considered in computing the time within which, by the terms of the contract, the plaintiff was required to perform its work. Although the defendant was to be responsible to the plaintiff in damages for such delays, provided they interfered with the material progress of its work, we are, nevertheless, of the opinion that the plaintiff was not justified, in view of the provisions of paragraph 7, in declining, on this account, to go on and complete the contract, and that the jury would not be warranted in finding from the evidence that the plaintiff was prevented from completing the contract within the time specified. The court erred in refusing this request.

The same question is raised by defendant's exceptions to specific portions of the charge, as noted in defendant's assignments of error, Nos. 19, 20, and 28.

[2] In assignments Nos. 79, 80, and 81, the defendant claims there was error in the admission of evidence tending to show that, at the time the plaintiff ceased work on the building, it had on hand and left

upon the premises certain materials, machinery, and tools, of the value of $3,500, which the defendant took and appropriated to its own use. This evidence was admitted upon the question of damages, subject to defendant's exception. It also appears by plaintiff's amended bill of particulars, filed November 9, 1912, that one of the items of damage sought to be recovered for breach of contract was the following:

"Value of tools and machinery converted by defendant, $3,500."

The bill of complaint contains a paragraph alleging a right to recover on the ground of quantum meruit; but counsel for plaintiff states in his brief that this was entirely disregarded, and that the trial proceeded solely upon the ground of a breach of the special contract. He fails, however, either in brief or argument, to suggest any ground upon which the above evidence could have been received, and none occurs to us. The conclusion to be drawn from the evidence and the bill of particulars is that the defendant converted the materials, tools, and machinery to its own use. If this is so, the evidence related to a matter entirely outside the contract, and could not properly be considered as an element of damage for its breach. The plaintiff's remedy to recover the value of these articles would seem to be an action of tort for conversion. The court erred in the admission of this evidence.

[3] Upon the question whether defendant's failure to make payments, as called for by the contract, would justify the plaintiff in declining to go on with the contract, the court charged the jury, as follows:

"If you find that the defendant failed to make payments, as called for by the contract, not over 85 per cent. and not [sic] otherwise in pursuance to the contract, on account of work done by the plaintiff in accordance with the terms of the contract, such failure constitutes a breach of contract on the part of the defendant, and justified the plaintiff in stopping work under the contract, and entitled it to recover from the defendant for damages."

And refused the following requests:

"The court instructs the jury that the delay of defendant to make payments on estimates, in the absence of a positive refusal to pay anything, was not ground for rescission or termination of the contract by plaintiff. The remedy of plaintiff was, and is, to recover interest on such deferred payments. Neither would such delay in making payments upon estimates be a cause for awarding any interest under the pleadings in the present action.

"The court instructs the jury that as a matter of law, under the evidence adduced in this case, it must find the issues herein in favor of defendant upon the cause of action attempted to be set forth against defendant in the complaint filed by plaintiff."

To the instruction given and the refusals to instruct the defendant duly excepted, and the errors assigned are the twenty-ninth, forty-second, and forty-third. Further exceptions were taken to the refusal of other requests bearing upon the same question, but we think the assignments above noted are sufficient.

In the letter of May 22, 1912, the plaintiff, in addition to notifying defendant that it declined to complete the contract because of the delays caused in the progress of the work, also declined on the ground that defendant had broken the contract through failure to make pay-

ments in accordance with its terms. It appears that on March 9, 1912, the plaintiff made a requisition for payment under the contract, in which it claimed there was due it:

```
"Extra work to your order,
    Reconstructed piers.................................... $300.00
Granite setting,
    3460 ft. @ 40¢ per sq. ft. surface,
    Amount of work completed to date........................18,237.00
Cash received..............................$3.765.80
Amount 15% reserve............................. 2,737.55
        Total ....................................... 6,501.05
Amount of this application...................................11,735.95"
```

If it be assumed that this requisition was in compliance with the terms of the contract, the questions presented by the above assignments of error are: (1) Whether the stipulation as to the time of payment of the installments was a material obligation, the breach of which would go to the essence of the contract, and would justify the plaintiff in declining to go on with the work; or (2) if time of payment was not of the essence of the contract, whether there was evidence from which the jury could find that defendant failed to make payment under such circumstances as to indicate an intention to repudiate the contract, which fact, if found, would justify the plaintiff in declining to complete the work under it. Wald's Pollock on Contracts (3d Ed., Williston), pp. 347–349.

As to the first proposition it may be said that there is a difference of opinion in this country, if not in England. Williston on Sales, §§ 465–467, and cases cited; Wald's Pollock on Contracts (3d Ed., Williston) pp. 329–332, and cases cited. While formerly the rule of·the common law was that "time is always of the essence of the contract," this has been largely modified at the present day by the rule in equity, which is to look at the whole scope of the transaction to see if the parties really intended that the time stipulated for should be of the essence (Wald's Pollock on Contracts, pp. 626, 627), and, guided by this rule, the English courts and our Supreme Court, in construing contracts between merchants, have held that stipulations as to time of shipment and delivery are material obligations, the breach of which go to the essence of the contract (Hoare v. Rennie, 5 H. & N. 197; Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Cleveland Rolling Mills Co. v. Rhodes, 121 U. S. 255; 7 Sup. Ct. 882, 30 L. Ed. 920); but with regard to payments under such contracts the English courts have held that a mere stipulation for time, without more, is not a material obligation, the breach of which would justify a refusal to deliver the balance of the merchandise contracted for. Mersey Co. v. Naylor, 9 App. Cas. 434. The Court of Appeals in the Sixth Circuit has reached the same conclusion. Cherry Valley Iron Works v. Florence Iron River Co., 64 Fed. 569, 12 C. C. A. 306; Monarch Cycle Mfg. Co. v. Royer Wheel Co., 105 Fed. 324, 44 C. C. A. 523. The case of Hull Coal & Coke Co. v. Empire Coal & Coke Co., 113 Fed. 256, 261, 262, 51 C. C. A. 213, in the Fourth Circuit, seems to have been decided upon the ground that the failure to pay as of the time agreed was, under the circumstances, a repudiation of the contract.

The particular phase of the question now under discussion has not been passed upon by the Supreme Court. The Court of Appeals for the Sixth Circuit, however, was of the opinion that the Supreme Court, in Norrington v. Wright, supra, had approved the English view as expressed in Mersey Co. v. Naylor, supra; and if it may fairly be said that this is so, and that, in contracts between merchants, a stipulation as to time of payment, without more, would be held in England and in the federal courts of this country not to be a material obligation, the breach of which would go to the essence and justify a refusal to perform on the other side, and that, to justify such a refusal, the circumstances must warrant the conclusion that the failure to pay amounted to a repudiation of the contract, the question is not concluded as to building contracts.

It remains, therefore, for us to consider whether the rule that obtains as to contracts between merchants should be applied to building contracts where the advance payments are not the equivalent and are not to be made in satisfaction of the work performed, as is the case ordinarily in mercantile contracts, or whether, in construing such contracts, we should go back of the mercantile rule to the reason out of which it arose, namely, the ascertainment of the parties' intention as expressed in the contract, viewed in the light of the subject-matter and the surrounding circumstances at the time it was made.

Two cases involving the interpretation of building contracts, where payments were to be made in installments, have been called to our attention (Canal Co. v. Gordon, 6 Wall. [23 U. S.] 561, 18 L. Ed. 894, and Phillips Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341), in which the Supreme Court held that the failure to pay an installment or installments justified the contractor in declining to complete his work under the contract. These cases however, are not necessarily decisive authorities here, as the conclusion there reached may have been due to the fact that the circumstances, under which the failure to make payment took place, were such as to manifest an intention to repudiate the contract; for it appeared that the party called upon to make payment did not merely neglect to do so at the time called for in the contract, but was then known to be financially unable to make payment.

[4] We are therefore remitted to the proposition of ascertaining the intention of the parties from the language of the contract, its subject-matter, and the surrounding circumstances. This calls for the determination of a question of fact; but, as it involves the construction of a written contract, it is a question for the court.

In addition to stipulating for monthly payments in advance, the amount to be ascertained by taking 85 per cent. of the cost of the work actually erected in the building, the defendant, in the closing paragraph of the contract, agreed as follows:

"And the said general contractors hereby promise and agree with the subcontractor to employ and do hereby employ him to provide the materials and to do the said work according to the terms and conditions herein contained and referred to for the price aforesaid, and hereby contract to pay the same at the time, in the manner, and upon the conditions above set forth."

It thus appears that the defendant, in addition to stipulating to make monthly payments in advance, further agreed to make them at the

time, in the manner and upon the conditions set forth in the contract. Under these circumstances, it seems to us the parties must have intended that the agreement as to time of payment should be regarded as material; otherwise, there could have been no reasonable occasion for the insertion of the above provision. We are also of the opinion that a building or construction contract like the one in question, calling, as it does, for performing labor and furnishing materials over a long period of time, and involving large expenditures, presents circumstances of such a nature as to indicate an intention that a stipulation as to time of payment should be material, and that its breach would go to the essence and justify the contractor in declining to complete the work. This is not only the legal construction of such a contract, but the result is equitable, due to the difference in circumstances attending partial performance of a building contract and a mercantile contract. The merchant who sells goods to be paid for in installments can, upon furnishing an installment of goods, maintain an action for the price (Brandt v. Lawrence, 1 Q. B. D. 344); whereas the contractor cannot without going on to perform his contract or holding himself in readiness to do so (Langdell's Summary of the Law of Contracts, p. 143, § 128; Williston on Sales, § 466).

[5] The discussion of the question of payments thus far has been upon the assumption that the plaintiff's requisitions were properly made out, and stated the amount which it was entitled to demand and defendant was legally bound to pay. Is such an assumption warranted from the terms of the contract and the evidence? The contract, in the twelfth paragraph, required the defendant to pay the plaintiff for the "work and materials"—which it was to perform and furnish under paragraph 1 of the contract—the sum of $64,750, "such sum" to be paid "in current funds by the general contractors to the subcontractor in monthly payments on account, not to exceed in amount 85 per cent. of the cost of the work actually erected in the building, provided that the subcontractor furnishes to the general contractors a written requisition, on a form to be supplied by the general contractors, not less than 12 days before payment is required." Paragraph 1 states the work and materials which plaintiff was to furnish for the $64,750, as follows:

"To furnish and set in position, including the concrete backing, all the imitation of sandstone, and to construct the interior concrete walls, concrete floors, concrete roof, backing the granite construction, inclosing all the I-beams, * * * including all labor and materials incident thereto."

It will be seen that the monthly payments which were to be made in advance were for the concrete work, and were to come out of the $64,-750, and had no relation to the sum to be paid for setting the granite. There is no provision in the contract that the plaintiff should be paid monthly for setting the granite. Paragraph 25 does not state when the granite work was to be paid for, and, in the absence of an express agreement, the inference is it was to be when that work was completed. In the requisitions of December 30, 1911, and March 9, 1912, which are the only requisitions put in evidence, the plaintiff demanded payment for the granite work in advance of its completion. In that

of December 30, 1911, there was a demand for erecting granite of $989.20, and in the one of March 9, 1912, of $1,384. These sums, according to the contract, were not properly included in the amounts called for in the requisitions, and we fail to see how defendant could be found in default and guilty of a breach of contract, justifying the plaintiff in declining to go on and complete its work, unless it was otherwise mutually agreed that advance payments for setting granite might be had and included in the requisitions, or unless defendant waived its right to object to their inclusion.

At the time the requisition of December 30, 1911, was made, it is not claimed and there is no evidence to show that the unit price of $1.07 per cubic foot had been agreed upon as a basis for ascertaining the amount to be paid; and no testimony was offered showing the amount or cost of the work actually erected at that time.

[6] As to the requisition of March 9, 1912, testimony was offered by the plaintiff, subject to defendant's exception, that in February, 1912, the parties agreed upon a unit basis of $1.07 per cubic foot, and that the concrete work called for in this requisition amounted to 15,-471 cubic feet, and, figured on the basis of $1.07 per cubic foot, came to $16,553.78. The assignments of error here relied upon are 59 and 60. There was no evidence that the amount called for in this requisition was based on the actual cost of the work erected in the building as required by paragraph 12 of the contract.

In the bill of complaint, article 9, the plaintiff alleges that, in making its requisitions, it thereby duly notified and demanded of the defendant payment, in accordance with the terms of the contract, of the sums due for work actually performed. It is evident that the testimony above referred to does not support this allegation, and that plaintiff attempted to prove, not that the requisitions had been made to conform to paragraph 12 of the contract, but that paragraph 12 had been modified by mutual agreement by the addition of a unit price for determining the cost and amount to be paid. To authorize the admission of this testimony plaintiff should have amended its complaint and alleged the modification of the contract, if a modification had been agreed to.

[7] The position is taken by the defendant that the plaintiff, in its letter of May 22, 1912, terminated and rescinded the contract, and was thereby precluded from maintaining an action upon the special contract. In the letter the plaintiff states it terminates the contract, but it is apparent, from the rest of the language used, that the word "terminate" was intended simply to convey the idea that the plaintiff declined to go on and complete the work, for it also says that it will hold the defendant responsible in damages for breach of the contract. Anvil Mining Co. v. Humble, 153 U. S. 540, 551, 552, 14 Sup. Ct. 876, 38 L. Ed. 814; Wald's Pollock on Contracts (3d Ed., Williston) pp. 351, 352.

[8, 9] On the question of damages the court instructed the jury, as follows:

"If you find that he [plaintiff] was justified in terminating the contract, as he did on May 22d, upon the principles above given you, you can consider the reasonable expenditures incurred by the plaintiff, the unavoidable losses incident to stoppage, the amount of work actually performed, the amount plaintiff was actually entitled to by reason of such work at the contract price, and the

profits which the plaintiff could have made if allowed to complete the work under the contract. So the different items that you may, if you come to the question, take into account, are the outlays, less the material on hand, the amount of work actually performed, and the profits, 'if you find there were any which were not speculative. The measure of profits is the contract price, less what is shown to you as the expense of carrying out the contract, if that is shown to your satisfaction."

To this the defendant excepted, and it is made the subject of the thirtieth assignment of error.

This part of the charge was given at the plaintiff's request. The court had previously instructed the jury, as to the elements of damage which it might consider in making up its verdict, in accordance with the rule as laid down in United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168, where the court said that in such a case a plaintiff might recover:

"First, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract."

The plaintiff was entitled to recover, if at all, the reasonable expenditures incurred in the performance of the contract (less payments made and materials on hand), and, if it suffered damages due to material delays in the progress of the work, which had not been included in the expenditures and were attributable to the defendant, then such damage should be added; also the profits that it would have realized from performing the contract. The trouble with the instruction is that it embodies a duplication of elements and is misleading. It is unnecessary to consider the matter further.

When the case was set for hearing in the Court of Appeals, counsel for plaintiff had not prepared his brief, and, under the rule of the court, was permitted to argue his case after having procured the consent of counsel for the defendant. Since then he has filed a brief, in which he contends that no bill of exceptions is before the court. This position is based upon the ground that the bill of exceptions was not signed by the judge before whom the case was tried. It appears that a transcript of the record, embodying the bill of exceptions, was prepared and agreed to as a true record by counsel for the respective parties, and was presented for the approval and signature of the trial judge within the time provided for so doing; that thereupon he approved the transcript, including the bill of exceptions, and drafted an order stating the facts, which he signed and directed should be attached to the transcript. This having been done, court and counsel evidently regarded the bill of exceptions as signed. In this we are inclined to believe they were right; that the plaintiff's objection is to the form, rather than the substance, of what took place, and that to sustain it would only work injustice. The objection, however, seems to have been obviated, as the bill of exceptions, which was seasonably presented for approval and signature, has since been signed.

We think we have considered all the questions necessary to a correct understanding of the case, or that will be of aid upon a new trial. The judgment of the United States District Court for Porto Rico is

reversed, the verdict is set aside, the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers its costs.